BEMMES et al., Appellees and Cross–Appellants,

v.

PUBLIC EMPLOYEES RETIREMENT SYSTEM OF OHIO; Warren/Clinton
Community Mental Health Board, Cross–Appellee;

Community Mental Health Centers of Warren
County, Appellant and Cross–Appellee.

[Cite as *Bemmes v. Public Emp. Retirement Bd.* (1995), 102 Ohio App.3d 782.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA94–06–054.

Decided May 22, 1995.

784

*Sheets, Ernst & Diehl* and *Thomas J. Diehl,* for appellees and cross-appellants.

*Robert S. Olson,* for appellant and cross-appellee Community Mental Health Centers of Warren County, Inc.

*Rittgers & Mengle* and *John S. Mengle,* for cross-appellee Warren/Clinton Counties Community Alcoholism Drug Addiction and Mental Health Services Board.

KOEHLER, Judge.

Defendant-appellant, Community Health Centers of Warren County, Inc. ("Agency"), appeals a judgment from the Warren County Common Pleas Court finding appellant liable for misrepresentation to employees and awarding damages to plaintiffs-appellees and cross-appellants, Becky Bemmes, Colleen Chamberlain, James Degener, Shirley Herkins, and Carol Weinert. Appellees cross-appeal the trial court's grant of summary judgment to defendant and cross-

appellee, Warren/Clinton Counties Community Alcoholism, Drug Addiction and Mental Health Services Board ("Board"),[1] and the amount of damages awarded by the court. We affirm the judgment of the trial court on both liability and damages.

Prior to July 1985, the Board directly operated its mental health clinics and centers. In June 1985, the Ohio Department of Mental Health issued a mandate that the Board change its method of operation. The Board had previously retained a consultant, Thomas S. Grogan, Jr., to "evaluate, develop, and present a plan to the Board detailing the establishment of a non-profit corporation for the mental health services program currently operated by the Board" ("Grogan report").

The Grogan report recommended that the Agency be established as a separate nonprofit corporation to provide mental health services. Grogan noted that in his interviews with current Board staff, they "indicated a strong desire to remain in the Public Employees Retirement System ['PERS']." The Grogan report recommended that the Board enter into a contractual agreement with the Agency to provide employees, which "will enable the retention of said employees on [PERS]." The report cited 1972 Ohio Atty.Gen.Ops. No. 72–055, indicating that a PERS member who continues to perform the same duties under the direction of a contractor taking over an operation which was previously publicly operated is a "public employee" under R.C. 145.01(A). The opinion then discussed new employees to such a contract and stated that "a new employee hired after a takeover by the * * * contractor * * * does not appear to be a public employee." The Grogan report concluded that "it is clear that any new employee joining the nonprofit corporation would not be eligible for enrollment in [PERS]."

The Agency was formed as a nonprofit corporation in June 1985. The contract between the Board and the Agency specified that the Board agreed to provide staff to deliver services as specified in the Agency budget, and to consider budget requests for additional staff. The Board agreed to provide payroll services through the Warren County Auditor, with the Agency reimbursing the Board for payroll and benefit expenses. David Lorenz, who had been serving as director of the Board clinics, was made director of the Agency.

Appellees were hired by Lorenz between August 1985 and July 1987, following interviews conducted at the Agency's headquarters. Lorenz told each appellee that he or she would be an employee of the Board working under contract to the Agency, and that he or she would be eligible for membership in PERS. Appellees indicated that they relied on this representation in accepting employment.

---

1. This party is referred to in the complaint as "Warren/Clinton Community Mental Health Board."

Following a 1989 PERS audit, the PERS board ruled that appellees were not public employees and were not eligible for PERS membership. PERS refunded the employer and employee contributions to the Warren County Auditor, and the funds were eventually placed into a new private pension plan. Appellees were also included in the Social Security system. Appellees filed suit against PERS, the Board, and the Agency alleging misrepresentation, breach of contract, negligence, misfeasance, and wrongful denial of membership in PERS. The trial court granted the Board's and PERS's motions for summary judgment and held a bifurcated trial on the issues of Agency liability and damages. Appellant raises three assignments of error on appeal:

"Assignment of Error No. 1:

"The trial court erred to the prejudice of defendant-appellant in finding it liable to the plaintiffs-appellees.

"Assignment of Error No. 2:

"The trial court erred to the prejudice of defendant-appellant in awarding damages to the plaintiffs-appellees that were not proper.

"Assignment of Error No. 3:

"The trial court erred to the prejudice of defendant-appellant by allowing plaintiffs-appellees to present evidence concerning damages from the loss of health benefits."

Appellant argues in its first assignment of error that the trial court's decision finding it liable to appellees for misrepresentation was against the manifest weight of the evidence. A judgment supported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 261–262, 376 N.E.2d 578, 579.

A claim of fraudulent misrepresentation requires proof of the following elements: (a) a representation; (b) which is material to the transaction at hand; (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (d) with the intent of misleading another into relying upon it; (e) justifiable reliance upon the representation; and (f) a resulting injury proximately caused by the reliance. *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 73, 23 OBR 200, 203–204, 491 N.E.2d 1101, 1105–1106.

Appellees testified that when they interviewed with David Lorenz, he told them that if they accepted employment they would be eligible for PERS. All appellees

said that membership in PERS was a material factor in their decision to accept employment at the Agency because they were either coming from other jobs where they were PERS members, or had heard about PERS and believed it to be a superior retirement plan. David Lorenz testified that he had read the Grogan report prior to interviewing appellees and offering them employment, but that he believed it was the Board's responsibility to confirm appellees' eligibility for PERS. Appellant argues that if there was a misrepresentation, it was one of law rather than fact and therefore not actionable. We disagree. Lorenz's misrepresentation encompassed a factual determination that appellees would meet PERS eligibility criteria by virtue of employment at the Agency.

The trial court found that David Lorenz made the representations to appellees concerning PERS eligibility while acting in his capacity as Agency Director and during the course of an activity designed to further Agency interests. The court further found that, given the clarity of the Grogan report, Lorenz's representations were at a minimum made with reckless disregard to their truth, that they were made with the intent of inducing reliance by appellees, and that appellees did rely on the representations to their detriment. We find that there is competent, credible evidence contained in the record to support the trial court's conclusion that the Agency is liable to appellees for Lorenz's misrepresentation, and we therefore overrule appellant's first assignment of error.

■■■ Appellant argues in its second assignment of error that appellees' damages for loss of health insurance upon retirement were speculative and should not have been awarded. In addition, appellant contests the $1,807.56 damage award to appellee, Carol Weinert, for loss of pension because Weinert did not have five years of service and was not vested in PERS. On review of a damages award, an appellate court must not reweigh the evidence, and may not disturb an award of damages unless it lacks support from any competent, credible evidence. *Tulloh v. Goodyear Atomic Corp.* (1994), 93 Ohio App.3d 740, 752, 639 N.E.2d 1203, 1210–1211, overruled on other grounds, *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51.

In this case, appellees were participating in PERS and were either vested or would become vested after completing five years of service. Appellant's own expert, Thomas Adams, testified that Carol Weinert's net pension loss after subtracting the present value of PERS benefits already paid and the present value of Social Security was $1,807.56. Appellees' expert, David Kelley, agreed on the gross pension loss figures, but subtracted the private pension plan contribution directly from the loss figures to come up with a higher net loss figure for each appellee. The trial court accepted the lower calculations of appellant's expert and made the damage awards accordingly.

■ The basic goal of tort damages is to place the injured party in the same financial position that he would have been in had there been no tort. 22 American Jurisprudence 2d (1988, Supp.1995) Damages, Section 601. In this case, when appellees were involuntarily terminated from PERS, they were either vested in the plan or had an expectancy interest. If the employer contribution was not included in the funds transferred to the private pension plan and factored into the pension loss calculation, appellees, whether vested or not, would be in a worse position than before the termination. We therefore find that there was competent, credible evidence to support the trial court's award of damages for pension loss to Carol Weinert.

■ Appellant also contests as uncertain and speculative the trial court's award of damages to each appellee for loss of retirement medical benefits. Under the present PERS scheme, each appellee would have been eligible for medical benefits during retirement upon reaching the age of sixty with at least ten years' service. Kelley testified to his calculations of the present value of appellees' loss of this future benefit. The figures were not rebutted by appellant. However, appellant did establish that only James Degener was eligible for retirement medical benefits under existing requirements, and that PERS has changed the eligibility requirements for medical retirement benefits at least once within the last five years. Appellant listed six health care plans currently before Congress as further illustration of the unstable nature of retirement health care plans in general.

■ The uncertainty which prevents a recovery of damages is generally uncertainty as to the fact of the damages, not the amount. 22 American Jurisprudence 2d (1988, Supp.1995), Damages, Section 25. Where it is certain that damages have resulted, mere uncertainty as to the amount will not preclude the right of recovery. *Id.* As to the amount of damages, only a reasonable certainty is required, which has been defined as "that degree of certainty of which the nature of the case admits." *Id.* at Section 23.

Appellees' termination from PERS, with the exception of Degener, cut off any potential to earn the retirement health benefit through employment with the Agency. Kelley calculated a sum certain for each appellee for the loss of the retirement medical benefit, ranging from $5,700 to approximately $16,000. The trial court concluded from the expert testimony that the fact of damage from the loss of the retirement medical benefit had been established, but the specific amount of loss to each appellee was debatable due to the nature of the benefit. Therefore, the court awarded each appellee the present value of approximately one year of medical retirement benefits as established by expert testimony. We conclude that in the factual context of this case and under the evidence presented, the amount of the damages awarded was established with reasonable certainty

and is supported by competent, credible evidence. Appellant's second assignment of error is therefore overruled.

Appellant contends in its third assignment of error that it was error for the trial court to allow Kelley to testify concerning damages from the loss of retirement medical benefits because that information was not disclosed during discovery. A trial court's ruling that certain evidence will be admitted or excluded from trial will not be reversed absent a showing of a clear and prejudicial abuse of discretion. *Malone v. Courtyard by Marriott Ltd. Partnership* (1994), 95 Ohio App.3d 74, 92, 641 N.E.2d 1159, 1171–1172, citing *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 17 O.O.3d 98, 100, 407 N.E.2d 490, 493. An abuse of discretion involves more than an error of judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1142.

In this case, the trial court discussed the matter of appellees' expert's testimony with counsel for both parties in chambers prior to admitting the testimony during the damage phase of the trial. Counsel for appellees indicated to the court that during discovery the previous year, he supplied appellant's counsel with Kelley's report indicating that the loss of health benefits was in the range of $8,000 to $18,000. Appellees' counsel indicated that he was not aware that the figures could be updated to reflect precise loss amounts as of the date of trial, that Kelley had only informed him the previous day that he could supply updated figures, and that appellant's counsel was faxed a copy of the updated figures as soon as they were received.

The trial court admitted Kelley's testimony on the medical retirement benefit loss and allowed appellant two weeks in which to reopen the case and present additional evidence on the issue. Appellant chose not to exercise the option. We find no prejudice to appellant in allowing Kelley's testimony to come in at trial considering the two-week option they were given. Further, we find that the trial court's fashioning of such a remedy to the situation was not arbitrary, unreasonable, or unconscionable. Because the trial court did not abuse its discretion in allowing Kelley's testimony to be admitted, appellant's third assignment of error is overruled.

Appellees and cross-appellants raise two assignments of error in their cross-appeal:

Cross–Assignment of Error No. 1:

"The trial court erred in granting the defendant [Warren/Clinton Counties Community Alcoholism Drug Addiction and Mental Health Services Board] motion for summary judgment."

Cross–Assignment of Error No. 2:

"The trial court erred in awarding the appellees'/cross-appellants only $3000 each for loss of medical benefits."

 In their first assignment of error, cross-appellants argue that there was a question of fact regarding whether David Lorenz was acting as a representative or agent of the Board so that the Board could be held liable in tort. Cross-appellants also allege that there is a question of fact as to whether there was any contract between them and the Board which would support a breach of contract theory. Appellate review of summary judgment requires that if reasonable minds can come to differing conclusions after construing the facts in a light most favorable to the nonmoving party, summary judgment should be denied. *Harless v. Willis Day Warehousing Co., Inc.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47.

 Generally, an employer is vicariously liable for the torts of an employee or agent but not for the torts of an independent contractor. *Clark v. Southview Hosp. & Family Health Ctr.* (1994), 68 Ohio St.3d 435, 438, 628 N.E.2d 46, 48–49. The Ohio Supreme Court has set out a test to distinguish a principal-agent or master-servant relationship from an employer-independent contractor relationship:

"The relationship of principal and agent or master and servant is distinguished from the relationship of employer and independent contractor by the following test: Did the employer retain control of, or the right to control, the mode and manner of doing the work contracted for? If he did, the relationship is that of principal and agent or master and servant. If he did not but is interested merely in the ultimate result to be accomplished, the relationship is that of employer and independent contractor." *Councell v. Douglas* (1955), 163 Ohio St. 292, 56 O.O. 262, 126 N.E.2d 597, paragraph one of the syllabus.

 In the instant case, the contract between the Agency and the Board is one whereby the Agency agreed to contract with the Board to provide mental health services, which is the ultimate result to be accomplished. David Lorenz, as Agency director, was responsible for hiring staff personnel and for supervision of the day-to-day activities of the Agency. The Board did not exercise control over the mode and manner of the work performed by the Agency under the contract. Therefore, the trial court correctly concluded as a matter of law that no relationship arose whereby the Board could be liable in tort to cross-appellants through the actions of David Lorenz. The trial court also concluded, and we agree, that no reasonable mind could conclude that there was any contract between the Board and cross-appellants to support a breach of contract theory. Therefore, cross-appellants' first assignment of error is overruled.

In their second assignment of error, cross-appellants argue that the trial court erred by awarding each of them only $3,000 for the loss of retirement medical benefits. We discussed this damage award under appellant's second assignment of error, *supra*, and concluded that the trial court's award of damages was supported by competent, credible evidence. Therefore, cross-appellants' second assignment of error is overruled.

*Judgment affirmed.*

WALSH, P.J., and WILLIAM W. YOUNG, J., concur.