OPINION
This is a civil appeal from the Girard Municipal Court, Trumbull County, Ohio. Appellant, Donald Floyd, d.b.a. Floyd Roofing Siding Company, appeals from the trial court's judgment entry granted in favor of appellees, Janet and William Edwards.
The following factual recitation is derived largely from the trial court's December 24, 1997 judgment entry. On or about July 5, 1996, appellees entered into a contract with appellant for certain improvements to be made on their residence located at 47 Smithsonian, Girard, Ohio 44420. Appellees agreed to pay appellant the sum of $10,345 for a four-phased improvement project. In phase one, appellant contracted to replace the front porch roof for $300 and install three vinyl windows in the attic for $700. In the second phase, appellant contracted to replace the portion of appellees' home covered with aluminum siding with vinyl siding and certain collateral work for $4,750. In the third phase, appellant contracted to tear off the existing vinyl siding on appellees' residence and replace it with new vinyl siding, including some collateral work, for $3,318. In the fourth phase, appellant contracted to install various doors, roof vents, awnings, shutters, seamless gutter and downspouts for $1,277.
On August 14, 1996, David C. Hall ("Hall"), who is a consulting engineer, appeared at the request of appellees to inspect appellant's work on appellees' residence at 47 Smithsonian, Girard, Ohio 44420. After completing the inspection, Hall made a report, on August 21, 1996, listing nine general deficiencies in appellant's work. Hall then sent the report to appellant.
When appellant failed to correct the problems outlined in Hall's report, appellees hired Matuszwski Roofing and Siding ("Matuszwski") to make the necessary modifications. Matuszwski completed its work in September 1996. Also, appellees corrected problems with the gutter and downspout draining systems on their own.
On February 14, 1997, appellees filed a complaint against appellant. In that complaint, appellees sought money damages in the amount of $15,000 for appellant's breach of contract. On December 17, 1997, a bench trial was held on appellees' complaint. During the trial, appellees produced two expert witnesses; Hall and Pablo Paulides ("Paulides").[1]
On the morning of December 17, 1997, Paulides inspected the appellees' residence located at 47 Smithsonian, Girard, Ohio 44420. On the basis of that inspection, Paulides testified in regard to the defective installation and buckling of the vinyl siding installed by appellant. Finally, Paulides indicated that forty percent of the materials would be salvageable, but the entire labor cost would have to be incurred again. In addition, Paulides testified that damages also must account for the labor cost associated with removing the damaged materials.
In a judgment entry filed on December 24, 1997, the trial court found that appellant satisfactorily completed the first and second phases, but did not complete the third and fourth phases in an adequate manner. Thus, the trial court held that appellant had breached its contract with appellees by failing to complete the third and fourth phases in a satisfactory workman-like manner comporting with industry standards.
Accordingly, the court determined that as a result of appellant's breach, appellees were entitled to a credit of $1,790 for the work performed by Matuszwski, and $710 for the work appellees did in correcting the drainage system. The record evidences that appellees paid appellant $2,500 less than the full contract price they had agreed upon for the work. Thus, in effect, the trial court issued the two foregoing credits against the amount owed on the balance of the contract for work not performed by appellant, instead of awarding appellees an additional $2,500 for compensatory damages. The trial court also held that appellees could recover the net sum of $6,068 plus costs. The trial court's judgment entry reveals that the award of $6,068 was based upon expert testimony provided by Paulides, who indicated that only forty percent of the vinyl siding could be salvaged and the entire labor cost would have to be incurred again.
On January 21, 1998, appellant filed a notice of appeal with this court and now timely asserts the following assignments of error:
 "[1.] The [t]rial [c]ourt erred in awarding judgment to the [appellees] when the [appellees] failed to establish a specific amount of damages.
 "[2.] The [t]rial [c]ourt erred when it allowed the testimony of the witness Pablo Paulides[,] whose presence at [t]rial was unexpected.
 "[3.] The [t]rial [c]ourt erred in granting judgment to the [appellees] when the testimony of its other expert witness and the testimony of [appellee] William Edwards established that if anything was owed to the [appellees,] it was compensated for by the balance or unpaid portion of the contract owed to the [appellant].
 "[4.] The [t]rial [c]ourt ruled upon incompetent testimony in the reaching of its verdict thus prejudices the [appellant] and creating reversible error."
In the first assignment of error, appellant contends that the trial court erred in awarding appellees the sum of $6,068 because the testimony proffered at trial failed to specify an exact amount of damages. Thus, appellant claims that the trial court awarded damages on the basis of mere speculation.
A trial court may award damages when the amount of the damages is reasonably certain, which is defined as "`that degree of certainty of which the nature of the case admits.'" (Citation omitted.) Bemmes v. Public Emp. Retirement Bd. (1995), 102 Ohio App.3d 782,789. When the existence of damage is established, damages may be determined so long as the computation is shown to be correct within a "fair degree of probability." Brewer v.Brothers (1992), 82 Ohio App.3d 148, 154.
The case law demonstrates that appellee was only required to prove the amount of damages to a "reasonable certainty." In order to meet this standard, appellee needed to compute the damages sustained, and show that the amount computed was correct within a "fair degree of probability." In support of their damages claim, appellees produced Paulides to offer expert testimony. The record reveals that Paulides is a registered architect who has supervised construction projects in which vinyl siding was utilized. Paulides testified that only about forty percent of the materials from appellant's work would be salvageable. In addition, Paulides testified that appellees would have to re-incur the entire labor cost. Finally, appellant admitted at trial that for the work on appellees' residence, it charged $4,500 for materials and $4,500 for labor. In combining the cost itemization provided by appellant, with the testimony of Paulides, the trial court was able to compute the amount of damages within a reasonable degree of certainty.
Based on the testimony of Paulides, appellees would pay approximately sixty percent of the $4,500 materials cost, which is $2,700, and the entire labor cost of $4,500. Using those calculations, the total cost for construction would be approximately $7,200. Therefore, the trial court did not err in awarding damages in the amount of $6,068. Thus, appellant's first assignment of error is not well-taken.
In the second assignment of error, appellant asserts that appellees produced a surprise expert witness, who provided testimony at the trial proceedings in this matter. Appellant contends that it was entitled to advance notice of all witnesses who would testify at trial, and that the last minute presentment of a witness requires the trial court to suspend or continue the trial for such time as is required for the other party to prepare for the testimony.
At the outset we note that appellant has failed to support his second assignment of error with any citations or references to specific places in the transcript. Therefore, we need not address this assignment of error. See App.R. 12(A)(2) and 16(A)(3),(7);Meerhoff v. Huntington Mtge. Co. (1995), 103 Ohio App.3d 164;State v. Minor (1988), 47 Ohio App.3d 22. However, in the interests of justice, we will address the merits of this assigned error.
In Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83, the Supreme Court of Ohio reversed the court of appeals and upheld the trial court's decision to exclude the appellee's expert witness. Prior to trial, both parties had exchanged interrogatories in which witnesses were to be identified. During discovery, appellants' expert medical witnesses were revealed to the appellee and later deposed. However, the appellee's interrogatory responses never identified any expert witnesses that would be called during trial.
The supreme court reversed the court of appeals because it determined that the trial court did not abuse its discretion by excluding the appellee's expert witness. Id. at 86. In support of its holding, the supreme court stated, "although surprise is all but eliminated under the Civil Rules relating to discovery, an evidentiary basis has long been recognized for the exclusion of otherwise relevant evidence if its admission would result in `unfair surprise' disproportionate to its probative value." Id.
at 85. The supreme court then quoted Civ.R. 26(E), which states in pertinent part:
 "A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:
 "(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to * * * (b) the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify.
 "(2) A party who knows or later learns that his response is incorrect is under a duty seasonably to correct the response." Id.
In the case sub judice, appellant has merely argued in its brief that the trial court wrongfully permitted appellees' expert to testify at trial. Appellant has not contended or shown that allowing appellees' expert witness to testify constituted "unfair surprise." In addition, appellant has neither presented a Civ.R. 26(E) argument nor shown, if it had raised such issue, that any interrogatories were presented to appellee requesting the identification of witnesses. Indeed, the record fails to demonstrate that appellant ever made any requests concerning the discovery of expert witnesses. Most importantly, appellant has failed to argue or demonstrate that the trial court abused its discretion by permitting appellees' expert witness to testify. Therefore, appellant's second assignment of error is not well-taken.
In the third assignment of error, appellant claims that the manifest weight of the evidence establishes that the extent of the damages owed to appellees, if any, as a result of a breach of contract, is $2,500. Appellant contends that the amount of $2,500 is arrived at by utilizing appellees' own calculations, as evidenced by the $1,900 payment to Matuszwski for correcting the deficiencies outlined in Hall's report and appellees' own valuation of their labor in correcting the drainage systems. Appellant further claims that the $2,500 damages amount, if awarded, was offset by the failure of appellees to pay the remaining balance on the contract.
Again, we note that this court is not required to address appellant's third assignment of error because it has failed to support any of its assertions with citations to statutes or case law. See App.R. 12(A)(2) and 16(A)(7); Meerhoff v. HuntingtonMtge. Co. (1995), 103 Ohio App.3d 164. However, this court will briefly address the merits of appellant's assignment of error.
In Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,79-80, the supreme court stated the following:
 "While we agree with the proposition that in some instances an appellate court is duty-bound to exercise the limited prerogative of reversing a judgment as being against the manifest weight of the evidence in a proper case, it is also important that in doing so a court of appeals be guided by a presumption that the findings of the trier-of-fact were indeed correct.
 "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. The interplay between the presumption of correctness and the ability of an appellate court to reverse a trial court decision based on the manifest weight of the evidence was succinctly set forth in the holding of this court in C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279 * * *:
 "`Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'" (Parallel citations omitted.)
In addition, the general measure of damages for a breach of contract is calculated by determining the amount necessary to place the non-breaching party in the position he/she would have been had the breaching party provided full performance pursuant to the governing contract. F. Enterprises, Inc. v. Kentucky FriedChicken Corp. (1976), 47 Ohio St.2d 154, 159, citing Allen, Heaton McDonald, Inc. v. Castle Farm Amusement Co. (1949), 151 Ohio St. 522.
In our case, the record demonstrates that at the trial in this matter, appellees testified that when appellant failed to correct the problems listed in Hall's report, it cost them $2,500 to make those modifications using their own labor and the services of Matuszwski, which cost $1,900. The record further reveals that appellees paid appellant $2,500 less than the full contract price, reflecting the cost of providing those services not rendered by appellant. However, the sum of $2,500 only reflects the damages known to appellees through September 1996. When the temperature began to cool, the vinyl siding began to contract, causing it to buckle. Only then did the appellees become aware of appellant's defective installation and the fact that such installation would cause the vinyl to buckle.
The testimony of Paulides established that the entire labor cost and most of the costs of the materials would have to be incurred again in order to remedy appellant's defective workmanship. Those costs were then calculated by the trial court using the same figures utilized by appellant. Thus, the trial court's decision to award appellees the sum of $6,068 in compensatory damages was supported by competent, credible evidence. In order to place appellees, the non-breaching party, into the same position it would have been had appellant fully performed under the contract, extensive repairs were necessary. Accordingly, appellant's third assignment of error is meritless.
In the fourth assignment of error, appellant contends that appellees' expert witness provided incompetent testimony that the trial court erroneously gave too much weight.
In reviewing appellant's brief, it becomes apparent that the argument actually advanced concerns the credibility of appellees' expert witness, not the competence of Paulides as a witness or his testimony. Incompetent evidence is "[e]vidence which the law does not permit to be presented at all, or in relation to the particular matter, on account of lack of originality or of some defect, in the witness, the document, or the nature of the evidence itself." Black's Law Dictionary (6 Ed.Abr. 1991) 526; see, also, 42 Ohio Jurisprudence 3d (1983) 432-464, Evidence and Witnesses, Sections 171-193. An example would be when evidence is obtained in violation of the Fourth Amendment. Such evidence would be "incompetent" (inadmissible), even if it was relevant and material.
Thus, appellant's fourth assignment of error is properly read as claiming that appellees' expert's testimony was unlawfully admitted. However, the discussion in the fourth assignment of error makes it entirely clear that appellant is questioning the "credibility" of the expert witness, not the competency of such evidence. Therefore, this court will address appellant's fourth assignment of error as attacking the credibility of the expert witness' testimony.
As discussed in the third assignment of error, the findings of the trial court are given deference because "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." SeasonsCoal, 10 Ohio St.3d at 80. In addition, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Foley,
54 Ohio St. 2d at syllabus.
In our case, the trial judge was able to observe Paulides as he testified, and was, therefore, in the best position to determine the credibility and weight to be afforded to such testimony. Furthermore, the record discloses that the testimony of Paulides was competent and credible. Therefore, appellant's fourth assignment of error is not well-taken.
For the foregoing reasons, appellant's assignments of error are without merit. Accordingly, the judgment of the Girard Municipal Court is affirmed. _________________________________ PRESIDING JUDGE DONALD R. FORD
NADER, J.,
O'NEILL, J., concur.
[1] The record reveals that the spelling of this witness' name is different in each of three source materials reviewed by this court. In the trial court transcript, the name is spelled, "Pavlos Pavlidis." In the trial court judgment entry dated December 24, 1997, the name is spelled, "Pablo Pavlides." Finally, in the appellant's brief, the name is spelled, "Pablo Paulides." Appellees' brief quotes the assignments of error in appellant's brief without making any spelling corrections to that name, and refers to such person only as the "expert witness" throughout the brief. This court will use the spelling, "Pablo Paulides," to refer to appellees' expert witness.