OPINION
Defendants-appellants appeal from the November 16, 1998, Judgment Entry of the Licking County Court of Common Pleas entering judgment in favor of plaintiff-appellee.
STATEMENT OF THE FACTS AND CASE, Appellant Borough Company is an unincorporated general partnership owned by appellants Stephen N. Thornborough and John R. Thornborough that buys and sells real estate. In 1994 or 1995, appellant Borough Company purchased property in the Village of Granville, Ohio, with the goal of subdividing the property into three lots. While one of the lots contained an old house, the other two lots were vacant. At the time of the purchase, sewer was not available to any of the three lots, including the lot with the existing house which was serviced by a septic tank. Whereas the sewer was over and down a hill, the water utilities were in the street right-of-way fronting all three lots. The Village Code of Granville required that sewer be put in when the lots were subdivided. In order to comply with this code, the Borough Company had to go down over the hill, connect into the main village sewer trunk line, bring a sewer line up the hill and through the road to the property. An easement was created to run the line to the property. A manhole was installed in the easement and a sewer line was run to the existing house on the center lot. The easement is located on the center property (where the house is) but the easement belongs to all three lots. Easements had to be platted to the two side lots per the village code. The Borough Company spent $25,000.00 bringing the sewer to the property. On January 6, 1998, appellee Barbara Lechner signed an offer to purchase one of appellant Borough Company's vacant lots for the price of $55,000.00. The purchase offer, which was prepared by James F. Ormond, a real estate agent, stated that "Sellers to provide water and sewer to property". The next day, appellee's offer was accepted by appellant John Thornborough on behalf of appellant Borough Company. Appellee, on January 8, 1998, delivered an earnest money check in the amount of $550.00 to Ormond. In addition to serving as a buyer's agent for appellee, Ormond had also listed all three lots for appellant Borough Company. After her offer was accepted by appellant Borough Company, appellee ordered a set of house plans and began contacting subcontractors. When, despite appellee's repeated requests to close on the real estate property, appellant Borough Company refused to construct and install sewer and water lines to her property line and failed to schedule a closing date, appellee, on March 9, 1998, filed a complaint against Borough Company and John and Stephen Thornborough. Appellee, in her complaint, requested specific performance of appellants' obligations under the contract as well as monetary damages. An amended Complaint was filed on March 12, 1998. Appellants filed a joint answer on April 13, 1998. In June of 1998, appellee sold the home in which she had been living and began renting property in Orrville at the rate of $850.00 per month. Appellee, who claims that she was forced to sell her home and move into an apartment after appellants failed to complete the subject contract in a timely manner, is still renting an apartment. A bench trial before Judge Gregory L. Frost was held on November 12, 1998. At the trial, the court found as a matter of law that the contract provision regarding the sellers' provision of water and sewer to the subject property was not ambiguous. The court, therefore, prohibited appellants from introducing parol evidence as to the meaning of such provision. Thereafter, the trial court, finding that appellants had breached their contract with appellee, ordered appellant Borough Company to proceed to closing and to install sewer and water hook-ups to appellee's property lot line within ninety (90) days. The court further held that the rental payments paid by appellee were additional expenses incurred due to appellants' breach. Thus, in addition to ordering specific performance of the contract by appellants, the court granted judgment in favor of appellee and against appellants in the amount of $5,100.00 together with interest, at the rate of ten percent (10%) per annum. Appellants were also ordered to pay appellee $850.00 per month beginning on December 1, 1998, until the closing. The judgment amount and the $850.00 per month were for rental payments paid by appellee beginning in June of 1998. A Judgment Entry memorializing the trial court's decision was filed on November 16, 1998. It is from the November 16, 1998, Judgment Entry that appellants prosecute their appeal, raising the following assignments of error:
I
 BECAUSE THE CONTRACT PROVISION IS AMBIGUOUS AND BECAUSE THE TRIAL COURT RELIED UPON PAROL EVIDENCE INTRODUCED BY LECHNER IN RENDERING ITS DECISION, THE TRIAL COURT SHOULD HAVE PERMITTED BOROUGH TO INTRODUCE PAROL EVIDENCE AND SHOULD HAVE ACCEPTED BOROUGH'S INTERPRETATION OF THE PROVISION.
II
 BECAUSE THERE WAS NO MEETING OF THE MINDS, THE PARTIES NEVER FORMED A VALID AND ENFORCEABLE CONTRACT.
III
 THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT AWARDED MONETARY DAMAGES OF $850 PER MONTH.
 I
Appellants, in their first assignment of error, argue that because the phrase "sellers to provide water and sewer to property" in the parties' contract is ambiguous, the trial court erred in excluding parol evidence proffered by appellants as to the meaning of such phrase. While the court found that such language clearly and unambiguously required appellants to provide a water and sewer hook-up to appellee's property line, appellants contend that under their understanding of such phrase, appellants were only required to make water and sewer facilities available so that appellee could run water and sewer lines to her lot line at her own expense. "Generally, courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement." Shifrin v. Forest City Enterprises, Inc. (1992), 64 Ohio St.3d 635, 638, citing Kelly v. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. However, if the language used in a contract is either unclear or ambiguous, extrinsic evidence can be considered in an effort to give effect to the parties' intentions. Kelly, supra at 132. In Alexander v. Buckeye Pine Line Co. (1978), 53 Ohio St.2d 241, paragraph two of the syllabus, the Ohio Supreme Court established the following test for determining whether contract terms are ambiguous: "common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Parol evidence cannot be considered if no ambiguity appears on the face of an instrument. Shifrin, supra. This court finds that the provision "sellers to provide water and sewer to property" is not, on its face, ambiguous. Giving the words in such provision their plain and ordinary meaning, and excluding any alleged parol evidence as to "industry-wide standards", it is apparent that the provision requires appellants to provide water and sewer to appellee's property line, rather than, as appellants contend, to make water and sewer facilities available to appellee to hook up to at her own expense. Any other such interpretation would be contrary to the plain language contained in such provision and would be unreasonable. If, as appellants suggest, the fact that the dictionary contains more than one definition for a word such as "provide" is indicative that its meaning in a contract is ambiguous, then every contract could be considered inherently ambiguous since many words have multiple definitions in the dictionary. Since the provision "sellers to provide water and sewer to property" is not ambiguous on its face, the trial court did not err in prohibiting the introduction by appellants of parol evidence as to the meaning of such provision. Appellants' first assignment of error is denied.
 II
In their second assignment of error, appellants argue that because there was no meeting of the minds with respect to the meaning of the provision "sellers to provide water and sewer to property", the parties never entered into a valid and binding contract. Appellants specifically point to the parties' differing interpretations of the word "provide". To have an enforceable contract, there must be a meeting of the minds of the parties to a contract. Noroski v. Fallet (1982). 2 Ohio St.3d 77. As part of the meeting of the minds, there must be a definite offer from one side and an acceptance on the other. Id. The contract must be both definite and certain. Nilavar v. Osborn (1998), 127 Ohio App.3d 1. In the case sub judice, appellee made an offer to purchase the subject property with the provision that "sellers to provide water and sewer to the property." Such provision, as is discussed above, clearly and unambiguously obligates appellant Borough to install water and sewer lines to appellee's property line. Appellant, in turn, accepted appellee's offer to purchase the subject property with knowledge of such condition. The clear language of the contract was agreed to by the parties. Since there was, therefore, a meeting of the minds, the trial court did not err in holding that the parties entered into a legally enforceable contract. Appellants' second assignment of error is denied.
 III
Appellants, in their final assignment of error, challenge the trial court's award of monetary damages in the amount of $850.00 per month to appellee. With respect to such damages, the trial court, in its November 16, 1998, Judgment Entry, stated as follows:
 "This court is . . . convinced that the Plaintiff was damaged by virtue of the rent being paid on the premises in which the defendant [sic] now resides. The testimony presented by the Plaintiff indicated that the Plaintiff first moved into her own home on Welsh Hills Road in Granville, Ohio, and then after that house was sold, rented property in Granville, Ohio, at the rate of Eight Hundred Fifty Dollars ($850.00) per month beginning in June, 1998, and continuing through the present. The Plaintiff was forced to move because she had relied upon the defendants to complete the contract in a timely manner. This court finds that the rental payments paid by the Plaintiff are additional expenses incurred as a result of defendants' breach."
In reviewing a damage award, an appellate court "must not reweigh the evidence, and may not disturb an award of damages unless it lacks support from any competent, credible evidence." Bemmes v. Public Emp. Retirement Bd. (1995), 102 Ohio App.3d 782,788. In this case, there is competent, credible evidence supporting the trial court's award of damages to appellee. Specifically, at the November 12, 1998, bench trial, the following testimony was adduced:
 "Q. Barb, [appellant] let me interrupt this discourse by asking you, you were living where when you made this offer?
 A. When I made the offer, I was living in Shepardson Condominiums which, as I said, was across the street, maybe a block away.
Q. Okay. And where do you live now?
A. Now I live at 16 Samson Place.
Q. And what is the rent at Samson Place?
A. Eight Hundred Fifty dollars a month.
 Q. Now, you have — when did you move into Samson Place?
A. At the end of June 1998.
 Q. And between — but you live — you moved from the condominiums somewhere else, didn't you?
 A. Yes, because I had intended to stay at the condominium until I finished building the house but when I found out that my building wasn't imminent, that I wasn't going to be able to start when I thought I was going to be able to, I had a house in Granville and I decided I had to move back into it because I didn't want to have to pay rent amount on it and also pay the expenses associated with the other house.
 Q. Okay. So you ultimately sold that house; is that correct?
A. Yes I did.
Q. When was that?
A. Well, it was closed at the end of June 1998.
Q. That's when you moved into Samson Place?
A. Right. I had to move then.
 Q. All right. And you have been living at Samson Place since then and the rent is 850 a month; is that correct?
A. Yes it is."
Transcript of proceedings at 49 — 51.
Since there is competent, credible evidence supporting the trial court `s award of damages to appellee in the amount of Eight Hundred Fifty Dollars ($850.00) per month, appellant's third assignment of error is overruled.
The judgment of the Licking County Court of Common Pleas is affirmed.
By Edwards, J. Hoffman, P.J. and Farmer, J. concur