[Cite as *Alexander v. Dept. of Rehab. & Corr.*, 2018-Ohio-1666.]

| | |
|---|---|
| CALVIN ALEXANDER | Case No. 2017-00606AD |
| Plaintiff | Interim Clerk Daniel R. Borchert |
| v. | <u>MEMORANDUM DECISION</u> |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

## FINDINGS OF FACT

{¶1} Plaintiff, Calvin Alexander, an inmate, filed a complaint against defendant Ohio Department of Rehabilitation and Correction ("ODRC"), seeking damages in the amount of $1,240.60. The court waived the $25.00 filing fee.

{¶2} Plaintiff's complaint asserts that, while housed at ODRC's Trumbull Correctional Institution ("TCI"), he went to work at the institution's barber shop, after which ODRC placed him in segregation. Plaintiff further asserts that "C/O's lost my property" and "are responsible for my property being stolen."

{¶3} Plaintiff seeks recovery for the following items at the indicated value: 1) tennis shoes at $78.62; 2) tennis shoes at $73.66; 3) clothe box at $542.94; 4) another clothe box (t.v.) at $322.33; 5) fan at $23.00; 6) J5 player at $120.00; 7) digital antenna at $20.00; 8) clippers at $35.00; and 9) headphones at $25.00. The total for these items is $1,240.55.

{¶4} Plaintiff submitted two invoices from Union Supply Direct with his complaint, one dated December1, 2015 and the other dated December 2, 2015. The December 1, 2015 invoice lists a Clear Tunes 15" television at a price of $216.95. Plaintiff's name does not appear anywhere on the December 1, 2015 invoice. The December 2, 2015 invoice also lists the same television as listed on the December 1,

2015 invoice. The December 2, 2015 invoice appears to contain plaintiff's signature with his inmate number and the date of December 4, 2015 handwritten next to it.

**{¶5}** The totals of the clothing items listed on the two Union Supply Direct invoices match the totals that plaintiff places on his "clothe" boxes. However, other than both listing a television, the invoices do not list any of the other specific items for which plaintiff seeks recovery. Both invoices contain a box entitled "CUSTOMER #." The number within these boxes is different on each invoice.

**{¶6}** Plaintiff submitted a packing slip from Access Securepak which lists an order date of November 29, 2015 and a single item, a pair of size 11 Nike tennis shoes, totaling $73.66. The packing slip indicated that an individual named Tenika Wall placed the order. Plaintiff's name does not appear anywhere on the packing slip. At the bottom of the Access Securepak packing slip, there is a line titled "received by" next to a line titled "date." Both lines are blank.

**{¶7}** Plaintiff submitted a sales order receipt from Walkenhorst's dated May 31, 2016. It lists a single pair of size 11 Nike tennis shoes, totaling $78.62. At the top of the Walkenhorst's receipt, plaintiff's name and inmate number are printed in handwriting. Plaintiff's signature appears to be at the bottom of the receipt along with plaintiff's inmate number.

**{¶8}** The signature on the December 2, 2015 Union Supply Direct invoice is very similar to the signature appearing at the bottom of the May 31, 2016 Walkenhorst's receipt.

**{¶9}** Plaintiff does not explain the term "clothe box." Plaintiff does not offer any explanation regarding the documents he submitted in support of his claim including the fact that his name and/or signature appears on some of the documents but not others. Plaintiff does not explain the difference between the customer numbers that appear on the Union Supply Direct invoices and does not explain why these two invoices, dated on consecutive days, indicate he ordered the same television twice in a two-day period. As

to the Access Securepak packing slip, plaintiff does not offer any explanation regarding the individual who appears to have placed the order, Tenika Wall.

{¶10} Plaintiff asserts he exhausted his administrative remedies to no avail. Plaintiff provided copies of his appeal to the chief inspector, a notification of grievance, and informal complaint resolution all related to his allegedly missing property. The earliest of these documents, the informal complaint resolution, is dated March 19, 2017. Plaintiff's appeal to the chief inspector, dated May 4, 2017, makes clear that plaintiff believes staff failed to secure his cell after placing him in segregation. The notification of grievance, dated April 10, 2017, references some items as missing that are not listed in plaintiff's complaint as well as some that are listed in the complaint. The same is true for the March 19, 2017 informal complaint resolution.

{¶11} Plaintiff provided an inmate property record dated June 12, 2015 that was completed at the time of his transfer to TCI. The only item of property that appears on the inmate property record for which plaintiff seeks recovery here are headphones, for which plaintiff has produced no receipt.

{¶12} Plaintiff also provided an inmate property record dated February 23, 2017, which notes plaintiff refused to sign it and certify its accuracy. The only item for which plaintiff seeks recovery that also appeared on the February 23, 2017 inmate property record is a pair of headphones.

{¶13} Plaintiff also provided four copies of responses to kites. The earliest indicated it is responsive to plaintiff's kite of February 27, 2017and instructs plaintiff to file a theft/loss report.

{¶14} After multiple orders to do so, defendant submitted an investigation report, denying liability. Defendant's response includes an investigative report from the Lebanon Correctional Institution ("LeCI") institutional inspector, Lora Austin, which indicated that plaintiff was transferred to LeCI from TCI on April 11, 2017. ODRC

offered no statement or report from anyone at TCI, the institution where plaintiff alleges the theft occurred. Defendant provided no documentation with its investigation.

{¶15} The investigative report relays the history of plaintiff's complaints regarding stolen property as they proceeded through ODRC's administrative process. ODRC does not provide any facts regarding the circumstances of plaintiff's transfer. Therefore, the investigative report does not deny the fact that ODRC placed plaintiff in segregation immediately after plaintiff's time working in the barber shop and does not deny that it then transferred plaintiff directly from segregation to LeCI. The report indicates that plaintiff refused to sign the pack-up slip in February of 2017. In so doing, plaintiff did not attest that the pack-up slip accurately reflected an inventory of his belongings. The investigative report provides no information concerning whether ODRC employees secured plaintiff's cell at the time of his transfer to segregation or to LeCI. The investigation report implies that plaintiff delayed reporting the theft but makes no mention of the kite plaintiff completed on February 27, 2017, just four days after his transfer to LeCI.

{¶16} In his response to ODRC's investigation, plaintiff asserts that he did not have the opportunity to return to his cell after being transferred to segregation. The February 23, 2017 inmate property record indicates plaintiff was not present when his belongings were packed-up.

CONCLUSIONS OF LAW

{¶17} In order to prevail, on a claim of negligence, plaintiff must prove, by a preponderance of the evidence, that defendant owed him a duty, that it breached that duty, and that defendant's breach proximately caused his injuries. *Armstrong v. Best Buy Company, Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 8 citing *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984).

{¶18} "Whether a duty is breached and whether the breach proximately caused an injury are normally questions of fact, to be decided . . . by the court . . ." *Pacher v.*

*Invisible Fence of Dayton*, 154 Ohio App.3d 744, 2003-Ohio-5333, 798 N.E.2d 1121, ¶ 41 (2nd Dist.), citing *Miller v. Paulson*, 97 Ohio App.3d 217, 221, 646 N.E.2d 521 (10th Dist. 1994); *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989).

**{¶19}** "It is the duty of a party on whom the burden of proof rests to produce evidence which furnishes a reasonable basis for sustaining his claim. If the evidence so produced furnishes only a basis for a choice among different possibilities as to any issue in the case, he fails to sustain such burden." *Steven v. Indus. Comm.*, 145 Ohio St. 198, 61 N.E.2d 198 (1945), paragraph three of the syllabus. *Shinaver v. Szymanski*, 14 Ohio St.3d 51, 471 N.E.2d 477 (1984). Although strict rules of evidence do not apply in administrative determinations, plaintiff must prove his case by a preponderance of the evidence. *Underwood v. Dept. of Rehabilitation and Correction*, 84-04053-AD (1985).

**{¶20}** Plaintiff has the burden of proving, by a preponderance of the evidence, that he suffered a loss and that this loss was proximately caused by defendant's negligence. *Barnum v. Ohio State University*, 76-0368-AD (1977).

**{¶21}** Black's Law Dictionary Sixth Edition (1990) defines preponderance of the evidence as: "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not." Plaintiff has not submitted any receipts or other evidence to prove ownership, time of purchase, condition, or any other fact relative to the fan, J5 player, digital antenna or clippers. Though plaintiff lists these items in his complaint, he has presented no evidence which would allow the court to make any determination regarding the items with reasonable certainty including whether he owned the items before his transfer from TCI to LeCI and at the time agents of ODRC packed-up his belongings. As such, plaintiff has failed to prove he suffered a loss for these items and plaintiff's claims for a fan, J5 player, digital antenna, and clippers are denied.

{¶22} As to plaintiff's claim for headphones, the two inmate property records both list headphones as being in plaintiff's possession at the time of his transfer to TCI and from TCI to LeCI. Plaintiff submitted no other documentation regarding ownership, time of purchase, or condition. Plaintiff offers no explanation regarding the headphones and does not differentiate, if even possible, between the headphones for which he seeks recovery and the headphones listed on both inmate property records. As such, plaintiff has failed to prove a loss with respect to the headphones and plaintiff's claim for the headphones is denied.

{¶23} Plaintiff submitted a packing slip from Access Securepak with the same total, $73.66, as one of the pairs of tennis shoes. However, this packing slip does not contain any indication that it belongs to plaintiff or that plaintiff ordered or paid for the shoes. Plaintiff's name appears nowhere on the packing slip and, in fact, it indicates that an individual named Tenika Wall ordered the tennis shoes. Plaintiff does not explain his relationship, if any, to Tenika Wall and does not explain the facts underlying the packing slip, the ordering of the tennis shoes, or the reasons Ms. Wall's name appears on the packing slip. As such, plaintiff has failed to prove a loss with respect to the tennis shoes he values at $73.66 and plaintiff's claim for these shoes is denied.

{¶24} Plaintiff submitted an invoice from Union Supply Direct with the same total, $322.33, as one of the "clothe" boxes for which plaintiff seeks recovery. However, this invoice does not contain any indication that it belongs to plaintiff or that plaintiff ordered or paid for the items listed on the invoice. Plaintiff's name appears nowhere on the invoice. Further, plaintiff submitted another Union Supply Direct invoice that does appear to bear his signature and inmate number and which bears a different customer number. The two Union Supply Direct invoices are dated only a day apart and both reflect an order for the same television. Plaintiff has not adequately explained why his name appears on one invoice but not another or why the customer numbers on the two invoices are different. The court also finds it suspicious that plaintiff would order the

same television from the same supplier on consecutive days especially given plaintiff's lack of explanation. As such, plaintiff has failed to prove a loss with respect to the "clothe box w/(tv)" which he values at $322.33 and plaintiff's claim for this item is denied.

**{¶25}** Although not strictly responsible for a prisoner's property, defendant had at least the duty of using the same degree of care as it would use with its own property. *Henderson v. Southern Ohio Correctional Facility*, 76-0356-AD (1979).

**{¶26}** This court in *Mullett v. Department of Correction*, 76-0292-AD (1976), held that defendant does not have the liability of an insurer (i.e., is not liable without fault) with respect to inmate property, but that it does have the duty to make "reasonable attempts to protect, or recover" such property.

**{¶27}** When prison authorities obtain possession of an inmate's property, a bailment relationship arises between the correctional facility and the inmate. *Buhrow v. Department of Rehabilitation and Correction*, 85-01562-AD (1985); *Sallows v. Department of Correction*, 85-07773-AD (1986). ODRC does not deny plaintiff was placed in segregation, nor that his property was packed up while in segregation. Further, ODRC does not deny plaintiff did not have the opportunity to return to his cell during his transfer to segregation and eventually from TCI to LeCI. "'A bailment is defined as a delivery of something * * * by one party to another, to be held according to the purpose or object of the delivery, and to be returned * * * when that purpose is accomplished.' (Footnotes omitted.) 8 Ohio Jurisprudence 3d (1978), 401, Bailments, Section 2." *Bacote v. Ohio Department of Rehabilitation and Correction,* 61 Ohio Misc.2d 284, 578 N.E.2d 565 (Ct. of Cl. 1988). A bailment relationship was created when ODRC's agents packed plaintiff's property.

**{¶28}** By virtue of the bailment relationship, defendant must exercise ordinary care in handling and storing the property. *Buhrow*; *Sallows*. If property is lost or stolen while in defendant's possession, it is presumed, without evidence to the contrary,

defendant failed to exercise ordinary care. *Merrick v. Department of Rehabilitation and Correction*, 85-05029-AD (1985); *Cox v. Southern Ohio Training Center*, 84-03740-AD (1986). ODRC, having failed to deny that it did not secure plaintiff's property, has, in effect, admitted that plaintiff suffered some property loss.

{¶29} Here, plaintiff produced a sales order slip from Walkenhorst's which bears his signature and inmate number and which establishes that he obtained the tennis shoes he values at $78.62 on or around May 31, 2016. Plaintiff also produced a December 2, 2015 invoice from Union Supply Direct, which also bears plaintiff's signature, totaling $542.94, the same total as that which plaintiff seeks for one of the "clothe" boxes. Thus, plaintiff has produced evidence establishing that he possessed these items before his belongings were packed up in February of 2017. However, the fact that plaintiff produced proof that he purchased these items well-before his transfer in February of 2017 does not establish that he possessed them at the time of transfer. Further, plaintiff does not provide evidence of the items' condition(s). The court can reasonably infer that the items would depreciate to some degree between May of 2016 and December of 2015 when he obtained the items and plaintiff's transfer to segregation in February of 2017.

{¶30} Many items of plaintiff's personal property are depreciable. This court has the authority to determine depreciation based on the age of the property in question. See *Weaver v. Ohio Department of Rehabilitation and Correction*, 2011-10134AD (2012); and *Woodward v. Ohio Dept. of Rehabilitation and Correction*, 2016-00267AD (2016); and *Bonnette v. Ohio Department of Rehabilitation and Correction*, 2017-00187AD (2018).

{¶31} Based upon the Claims Pages, Depreciation Guide, and following property items listed on the Union Supply Direct invoice of December 2, 2015, the following property has the following replacement value: five Gildan T-shirts, $11.55; two sweatshirts and two pars of sweatpants, $20.40; four pairs of underwear, $4.76;

Timberland boots, $26.40; Clear Tunes television, $180.985; and no replacement value for the four packages of socks and the tennis shoes. Plaintiff's depreciated property loss totals $244.06 warranted.

{¶32} The credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The court is free to believe or disbelieve, all or any part of each witness's testimony *State v. Antill*, 176 Ohio St. 61, 197 N.E.2d 548 (1964). The court has some doubts regarding the credibility of plaintiff's version of the facts given the unexplained issues with the various forms of proof of purchase plaintiff submitted. This serves as another basis to reduce the amount of any damage award.

{¶33} Damage assessment is a matter within the function of the trier of fact. *Litchfield v. Morris*, 25 Ohio App.3d 42, 495 N.E.2d 462 (10th Dist. 1985). Reasonable certainty as to the amount of damages is required, which is that degree of certainty of which the nature of the case admits. *Bemmes v. Pub. Emp. Retirement Sys. of Ohio*, 102 Ohio App.3d 782, 658 N.E.2d 31 (12th Dist. 1995). The lack of certainty concerning the items' as a whole serves as an additional basis to reduce any damage award.

{¶34} Based on the foregoing, the court renders judgment in favor of plaintiff in the amount of $244.06.

| | |
|---|---|
| CALVIN ALEXANDER | Case No. 2017-00606AD |
| Plaintiff | Interim Clerk Daniel R. Borchert |
| v. | ENTRY OF ADMINISTRATIVE DETERMINATION |
| OHIO DEPARTMENT OF | |

[Type here]

REHABILITATION AND CORRECTION

     Defendant

Having considered all the evidence in the claim file and, for the reasons set forth in the memorandum decision filed concurrently herewith, judgment is rendered in favor of plaintiff in the amount $244.06.  Court costs are assessed against defendant.

DANIEL R. BORCHERT
Interim Clerk

Filed 4/16/18
Sent to S.C. Reporter 4/30/18