[Cite as *Chasteen v. Mansfield Corr. Inst.*, 2011-Ohio-7062.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

ADAM CHASTEEN

   Plaintiff

   v.

MANSFIELD CORRECTIONAL INSTITUTION

   Defendant

Case No. 2010-13059-AD

Deputy Clerk Daniel R. Borchert

MEMORANDUM DECISION

{¶1}   Plaintiff, Adam Chasteen, an inmate formerly incarcerated at defendant, Mansfield Correctional Institution (ManCI), filed an amended complaint on April 12, 2011, alleging that mail sent to him by his fiancee, Rachel Lynch, "was withheld in excess of two weeks without any notification" to him.  Plaintiff further asserted that he "had experienced prior instances of misconduct and prejudice from mailroom staff preceding this incident."  Plaintiff related that he filed a grievance and requested that the rest of the contents not in question be returned to him. Plaintiff indicated that the mailing from Ms. Lynch included three photographs of his deceased father, a letter from Ms. Lynch, two relationship questionnaires, and a fifteen-page research report handwritten by plaintiff, along with miscellaneous pages drafted by plaintiff and pertaining to his personal business endeavors.

{¶2}   According to plaintiff, he notified ManCI staff on May 15, 2009, that the withheld materials were to be mailed to Ms. Lynch; however he learned that the materials were instead forwarded to defendant's central office Publication Screening

Committee (PSC) on May 14, 2009, for review. Plaintiff alleged that the mail was never received by the PSC and that it remained lost until it was "forwarded to the Dayton Correctional Institution" in June 2010, and then returned to him, in part, on March 16, 2011. Plaintiff asserted the following items were not turned over to him: three photographs of his deceased father, a letter written to him by Ms. Lynch, and one of the two questionnaires compiled by Ms. Lynch. In addition, plaintiff's fifteen-page research report was deemed to be "inappropriate" and plaintiff was not permitted to possess it; however, plaintiff claimed he was not provided with a satisfactory explanation for its exclusion.

{¶3} Plaintiff stated that he suffered emotional distress due to the loss of the photographs and the letter from his fiancee. In addition, plaintiff suggested that ManCI staff intentionally misplaced his mail as a form of retaliation against him. Plaintiff concluded that his rights had been violated and argued that the court should "enjoin" defendant from violating the Ohio Administrative Code and defendant's internal policies. Plaintiff requested compensatory damages in the amount of $1,500.00, "for the loss of irreplaceable personal property," and "$1,000.00 in damages for emotional distress caused by staff misconduct and continual violation" of defendant's policies.[1] Payment of the filing fee was waived.

{¶4} Defendant admitted liability for the loss of three photographs and four pieces of paper. Defendant acknowledged the following items were returned to plaintiff: Bargain Genius .com, Reference Book Library, website listings (three pages), scholarships, grant resources, music directory (four pages), relationship questionnaire x1, contents page of letter. However, in regard to the book report, defendant asserted this was properly withheld pursuant to Administrative Rule 5120-9-17.

{¶5} Ohio Adm. Code 5120-9-17, states as follows:

{¶6} "(A) Mail in the form of first class letters or electronic mail addressed to an inmate shall not be withheld except as provided in this rule. There shall be no limitation on the number of first class letters that an inmate may receive nor the number of

---

[1] Initially, it should be noted that this court does not recognize entitlement to damages for mental distress and extraordinary damages for simple negligence involving property loss. *Galloway v. Department of Rehabilitation and Correction* (1979), 78-0731-AD; *Berke v. Ohio Dept. of Pub. Welfare* (1976), 52 Ohio App. 2d 271, 6 O.O. 3d 280, 369 N.E. 2d 1056. Consequently, the claim for such damages is denied and shall not be further considered. The court shall address plaintiff's claim based on

persons with whom an inmate may correspond.

{¶7} "(B) Inspection of incoming mail:

{¶8} "(1) All mail, including electronic mail, other than legal mail, shall be opened and may be read or copied in the institution mail office and inspected for the presence of contraband, unauthorized forms of funds, and other threats to the security and safety of the institution. The written portion of the mail shall then be promptly delivered to the inmate, unless withheld in accordance with paragraph (G) of this rule.

{¶9} "* * *.

{¶10} "(C) The warden or his designee shall determine the disposition of contraband pursuant to rule 5120-9-55 of the Administrative Code. The contraband may be returned to the sender, confiscated as evidence, held for the benefit of the inmate-addressee, or otherwise disposed of in a manner consistent with the law.

{¶11} " * * * .

{¶12} "(G) Mail, including electronic mail, that presents a threat to the security and safety of the institution, its staff or inmates, may be withheld from the inmate-addressee. No material or correspondence will be considered to present a such a threat solely on the basis of its appeal to a particular ethnic, political, racial or religious group. To constitute a such a threat, the correspondence must meet at least one of the following criteria:

{¶13} "(1) The correspondence incites, aids, or abets criminal activity or violations of departmental rules, such as, but not limited to, rioting, extortion, illegal drug use or conveyance of contraband;

{¶14} "(2) The correspondence incites, aids, or abets physical violence against others, such as, but not limited to, instructions in making, using, or converting weapons;

{¶15} "(3) The correspondence incites, aids, or abets escapes, such as, but not limited to, instructions on picking locks or digging tunnels;

{¶16} "(4) The correspondence is in code or cipher.

{¶17} "(H) Procedures for withholding correspondence are as follows:

{¶18} "(1) The initial decision to withhold the correspondence will be made by the officer charged with inspecting it, with the concurrence of the mail room supervisor.

{¶19} "(2) The inmate-addressee and the author of the correspondence will be

---

the standard measure of damages for property loss.

notified, in writing, that the correspondence was withheld. * * *

{¶20} "(3) The notification will be sent to the author and the inmate-addressee within seven calendar days of the decision to withhold, unless the warden determines that the notification will interfere with the conduct of a pending investigation.

{¶21} "(4) Decisions to withhold mail, including electronic mail, may be appealed in writing by the author to the warden or his designee within fifteen calendar days of the date of the mailing of the notification. The appeal should explain why the correspondence does not present a threat to the security and safety of the institution, its staff or inmates.

{¶22} "(5) The written appeal and the correspondence will be considered by the warden or designee who shall determine whether the correspondence will be withheld or delivered to the inmate.

{¶23} "(6) Any correspondence withheld from an inmate-addressee will be retained during the pendency of the appeal or for the time in which an appeal may be filed.

{¶24} "(7) If it is determined on appeal that the correspondence does not present a threat to the safety and security of the institution, its staff or inmates, the correspondence will be immediately delivered to the inmate-addressee.

{¶25} "(8) If it is determined on appeal that the correspondence presents a threat to the safety and security of the institution, its staff or inmates, or, if no appeal is taken, the mail may be returned to the author, held as evidence for criminal prosecution or a disciplinary proceeding, or destroyed.

{¶26} "(I) Mail, including printed electronic mail, in the possession of an inmate may, when approved by the warden or his designee, be seized, read, and copied where a reasonable belief exists that it may contain evidence of a violation of federal or state law or departmental rules. If a staff member reasonably believes there is a present risk of destruction of such mail, it may be seized and forwarded to the warden or his designee for review. * * * ."

{¶27} Plaintiff filed a response essentially reiterating the allegations of his complaint. Plaintiff contended that the research report "is merely a creative interpretation of his education and the contents of a book acquired via Inter Library Loan" while plaintiff was housed at ManCI. Plaintiff further argued that he has not been

afforded the right to have the research report reviewed by the PSC, which plaintiff asserted is a violation of his right to due process. Indeed, plaintiff maintained that "every single aspect of the mailing unlawfully withheld by Defendant is in violation of every applicably provision of the Due Process Clause and OAC § 5120." Plaintiff included an affidavit from Ms. Lynch detailing the contents of the mailing she sent to plaintiff in April 2009. In addition, plaintiff again raised the issue of his emotional distress and associated damage claim.

{¶28} Plaintiff maintained that ManCI staff engaged in repeated intentional acts when they allegedly withheld plaintiff's mail in retaliation for his use of the grievance procedure. To determine if ManCI should bear responsibility for an employee's wrongful act, a finding must be made, based on the facts presented, whether or not the injury-causing act was manifestly outside the course and scope of employment. *Elliott v. Ohio Dept. of Rehab. & Corr.* (1994), 92 Ohio App. 3d 772, 775, 637 N.E. 2d 106; *Thomas v. Ohio Dept. of Rehab. & Corr.* (1988), 48 Ohio App. 3d 86, 89, 548 N.E. 2d 991; and *Peppers v. Ohio Dept. of Rehab. & Corr.* (1988), 50 Ohio App. 3d 87, 90, 553 N.E. 2d 1093. It is only where the acts of state employees are motivated by actual malice or other such reasons giving rise to punitive damages that their conduct may be outside the scope of their state employment. *James H. v. Dept. of Mental Health and Mental Retardation* (1980), 1 Ohio App. 3d 60, 61, 1 OBR 6, 439 N.E. 2d 437. The act must be so divergent that it severs the employer-employee relationship. *Elliott*, at 775 citing *Thomas*, at 89, and *Peppers,* at 90.

{¶29} Malicious purpose encompasses exercising "malice," which can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified. *Jackson v. Butler Cty. Bd. of Cty. Commrs.* (1991), 76 Ohio App. 3d 448, 453-454, 602 N.E. 2d 363, citing *Teramano v. Teramano* (1966), 6 Ohio St. 2d 117, 118, 35 O.O. 2d 144, 216 N.E. 2d 375; and *Bush v. Kelly's Inc.* (1969), 18 Ohio St. 2d 89, 47 O.O. 2d 238, 247 N.E. 2d 745.

{¶30} The Supreme Court of Ohio has established that an employer is liable for the tortious conduct of its employee only if the conduct is committed within the scope of employment and if the tort is intentional, the conduct giving rise to the tort must facilitate or promote the business of which the employee was engaged. *Byrd v. Faber* (1991), 57

Ohio St. 3d 56, 565 N.E. 2d 584, citing *Little Miami RR. Co. v. Wetmore* (1869), 19 Ohio St. 110, and *Taylor v. Doctors Hosp.* (1985), 21 Ohio App. 3d 154, 21 OBR 165, 486 N.E. 2d 1249.

{¶31} Further, an intentional and willful tort committed by an employee for his own purposes constitutes a departure from the employment, so that the employer is not responsible. *Szydlowski v. Ohio Dept. of Rehab. & Corr.* (1992), 79 Ohio App. 3d 303, 607 N.E. 2d 103, citing *Vrabel v. Acri* (1952), 156 Ohio St. 467, 46 O.O. 387, 103 N.E. 2d 564. The facts of this case, taken as plaintiff asserted, would constitute an intentional tort committed by defendant's employees performed for their own personal purpose. Following this rationale, plaintiff cannot maintain a cause of action against defendant for the intentional malicious act of its employees.

{¶32} To the extent that plaintiff alleges claims based upon retaliation, action against the state under Section 1983, Title 42, U.S. Code may not be brought in the Court of Claims because the state is not a "person" within the meaning of Section 1983. See, e.g., *Jett v. Dallas Indep. School Dist.* (1989), 491 U.S. 701, 109 S. Ct. 2702, 105 L. Ed. 2d 598; *Burkey v. Southern Ohio Correctional Facility* (1988), 38 Ohio App. 3d 170, 528 N.E. 2d 607; *White v. Chillicothe Correctional Institution* (Dec. 29, 1992), Franklin App. No. 92-AP-1229. Indeed, claims of retaliation are to be treated as an action for alleged violations of constitutional rights under Section 1983, Title 42, U.S. Code. Thus, this court is without jurisdiction to hear those claims. Moreover, although plaintiff seeks redress for alleged violations of his constitutional due process rights, such claims are dismissed. It is well-settled that this court lacks jurisdiction to hear a claim that asserts constitutional violations. *Gersper v. Ohio Dept. of Hwy. Safety* (1994), 95 Ohio App. 3d 1, 641 N.E. 2d 1113.

{¶33} In addition, prison regulations, including those contained in the Ohio Administrative Code, "are primarily designed to guide correctional officials in prison administration rather than to confer rights on inmates." *State ex rel. Larkins v. Wilkinson*, 79 Ohio St. 3d 477, 479, 1997-Ohio-139, 683 N.E. 2d 1139, citing *Sandin v. Conner* (1995), 515 U.S. 472, 481-482, 115 S. Ct. 2293, 132 L. Ed. 2d 418. Additionally, this court has held that "even if defendant had violated the Ohio Administrative Code, no cause of action would exist in this court. A breach of internal regulations in itself does not constitute negligence." *Williams v. Ohio Dept. of Rehab.*

*and Corr.* (1993), 67 Ohio Misc. 2d 1, 3, 643 N.E. 2d 1182. Accordingly, to the extent that plaintiff alleges that ManCI staff violated internal prison regulations and the Ohio Administrative Code, he fails to state a claim for relief. See *Sharp v. Dep't of Rehab. & Corr.*, Ct. of Cl. No. 2008-02410-AD, 2008-Ohio-7064, ¶5.

{¶34} The Supreme Court of Ohio has held that "[t]he language in R.C. 2743.02 that 'the state' shall 'have its liability determined *** in accordance with the same rules of law applicable to suits between private parties ***' means that the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." *Reynolds v. State* (1984), 14 Ohio St. 3d 68, 70, 14 OBR 506, 471 N.E. 2d 776; see also *Von Hoene v. State* (1985), 20 Ohio App. 3d 363, 364, 20 OBR 467, 486 N.E. 2d 868. Prison administrators are provided "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institution security." *Bell v. Wolfish* (1979), 441 U.S. 520, 547, 99 S. Ct. 1861, 60 L. Ed. 2d 447. The trier of fact finds that in accordance with Ohio Adm Code § 5120-9-17 (G), defendant identified a reasonable basis for withholding the confiscated research report in that its contents presented information that posed a threat to the safety and security of the institution.

{¶35} Finally, in order to prevail on his lost property claim, plaintiff must prove, by a preponderance of the evidence, that defendant owed him a duty, that defendant breached that duty, and that defendant's breach proximately caused his injuries. *Armstrong v. Best Buy Company, Inc.,* 99 Ohio St. 3d 79, 2003-Ohio-2573, ¶8 citing *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St. 3d 75, 77, 15 OBR 179, 472 N.E. 2d 707.

{¶36} "Whether a duty is breached and whether the breach proximately caused an injury are normally questions of fact, to be decided by . . . the court . . ." *Pacher v. Invisible Fence of Dayton*, 154 Ohio App. 3d 744, 2003-Ohio-5333, ¶41, citing *Miller v. Paulson* (1994), 97 Ohio App. 3d 217, 221, 646 N.E. 2d 521; *Mussivand v. David* (1989), 45 Ohio St. 3d 314, 318, 544 N.E. 2d 265. Although not strictly responsible for a prisoner's property, defendant had at least the duty of using the same degree of care as it would use with its own property. *Henderson v. Southern Ohio*

*Correctional Facility* (1979), 76-0356-AD. Plaintiff has the burden of proving, by a preponderance of the evidence, that he suffered a loss and that this loss was proximately caused by defendant's negligence. *Barnum v. Ohio State University* (1977), 76-0368-AD. This court in *Mullett v. Department of Correction* (1976), 76-0292-AD, held that defendant does not have the liability of an insurer (i.e., is not liable without fault) with respect to inmate property, but that it does have the duty to make "reasonable attempts to protect, or recover" such property.

{¶37}    Negligence on the part of defendant has been shown in respect to the loss of three photographs, one four-page letter, and one two-page questionnaire. *Billups v. Department of Rehabilitation and Correction* (2001), 2000-10634-AD, jud. *Tyler v. Ohio Dept. of Rehab. & Corr.*, Ct. of Cl. No. 2007-07299-AD, 2008-Ohio-3418.

{¶38}    As trier of fact, this court has the power to award reasonable damages based on evidence presented. *Sims v. Southern Ohio Correctional Facility* (1988), 61 Ohio Misc. 2d 239, 577 N.E. 2d 160. Damage assessment is a matter within the function of the trier of fact. *Litchfield v. Morris* (1985), 25 Ohio App. 3d 42, 25 OBR 115, 495 N.E. 2d 462. Reasonable certainty as to the amount of damages is required, which is that degree of certainty of which the nature of the case admits. *Bemmes v. Pub. Emp. Retirement Sys. Of Ohio* (1995), 102 Ohio App. 3d 782, 658 N.E. 2d 31.

{¶39}    The standard measure of damages for personal property is market value. *McDonald v. Ohio State Univ. Veterinary Hosp.* (1994), 67 Ohio Misc. 2d 40, 644 N.E. 2d 750. The trier of fact finds that the value of plaintiff's property that has been confirmed as lost while under the control of ManCI staff amounts to $5.00. Defendant is liable to plaintiff for that amount.



## Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

ADAM CHASTEEN

      Plaintiff

      v.

DEPT. OF REHAB. AND CORR.

      Defendant

      Case No. 2010-13059-AD

Deputy Clerk Daniel R. Borchert

ENTRY OF ADMINISTRATIVE
DETERMINATION

Having considered all the evidence in the claim file and, for the reasons set forth in the memorandum decision filed concurrently herewith, judgment is rendered in favor of plaintiff in the amount of $5.00. Court costs are assessed against defendant.

                                       DANIEL R. BORCHERT
                                       Deputy Clerk

Entry cc:

Adam Chasteen, #566-894           Gregory C. Trout, Chief Counsel
P.O. Box 740                       Department of Rehabilitation
London, Ohio  43140             and Correction
                                 770 West Broad Street
                                 Columbus, Ohio  43222

SJM/laa
10/28
Filed 11/8/11
Sent to S.C. reporter 4/5/12