[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Arbors E. RE, L.L.C. v. Franklin Cty. Bd. of Revision,* Slip Opinion No. 2018-Ohio-1611.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-1611

ARBORS EAST RE, L.L.C., APPELLANT, *v.* FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Arbors E. RE, L.L.C. v. Franklin Cty. Bd. of Revision,* Slip Opinion No. 2018-Ohio-1611.]

*Taxation—Real-property valuation—Board of Tax Appeals erred in failing to exercise its statutory authority to obtain a complete record and in holding as matter of law that any allocation of a property's sale price to goodwill is improper—Decision vacated and cause remanded.*

(No. 2015-1410—Submitted December 5, 2017—Decided April 26, 2018.)

APPEAL from the Board of Tax Appeals, Nos. 2014-4527 and 2014-4607.

————————————

**Per Curiam.**

{¶ 1} At issue is the 2011 value, with carryover to 2012 and 2013, of a nursing home that was purchased by its former lessee in April 2011. The parties dispute whether and to what extent the sale price, $7,490,000, ought to have been

allocated to assets other than the real estate. The Franklin County Board of Revision ("BOR") ordered a small reduction in value to $7,202,900 after making a small deduction for furniture, fixtures, and equipment ("FF&E") (i.e., tangible personal property). On appeal, the Board of Tax Appeals ("BTA") reinstated the entire sale price as the value of the real estate. Arbors East has appealed, asserting that the BTA improperly failed to make allocations in accordance with the appraisal report it submitted below. Because we find that the BTA neglected to exercise its statutory authority to obtain a complete record, and because it predicated its decision in part on legal errors, we vacate the BTA's decision and remand the case for further proceedings consistent with this opinion.

## I. Course of proceedings

{¶ 2} The county auditor valued the subject property for tax year 2011, a reappraisal year in Franklin County, at $4,000,000. Appellee Columbus City Schools Board of Education ("the BOE") filed a valuation complaint seeking an increase to the full sale price of $7,490,000; thereafter, Arbors East filed a separate original complaint seeking a reduced valuation of $3,500,000.

{¶ 3} At the consolidated BOR hearing, the BOE relied on the conveyance-fee statement, which showed the entire sale price of $7,490,000 allocated to the realty. Also in evidence was a Purchase and Sale Agreement relating to the sale, and a deed. Arbors East presented an appraisal report and testimony from Samuel D. Koon, a member of the Appraisal Institute.

{¶ 4} Whether to use the sale price is not in dispute; the controversy lies in whether and how to allocate that sale price among assets. Koon noted that on the 2011 tax-lien date, Nationwide Health Properties, Inc., owned the property but that Arbors East purchased it on April 5, 2011. Koon testified before the BOR that he investigated the transfer and determined that the sale was "an arms-length transaction of a going concern." He specifically testified that "[t]hat is what the property-owner contact told us, is that this was a transfer of a going concern."

2

According to Koon, the components of the transfer were the real property, the FF&E, and the business goodwill, "mingled together" to constitute a going concern.

{¶ 5} Koon compared recent sales of comparable nursing homes to arrive at a going-concern value of the subject property as of the January 1, 2011 tax-lien date equal to the April 2011 sale price. Thereafter, he allocated that value on the understanding that the present sale, like the sales of the comparable properties, constituted a sale of all the assets of the nursing-home business, including licenses, FF&E, and goodwill. Using cost schedules and market-extraction techniques, Koon determined the portions of the total sale price of the subject property allocable to FF&E ($300,000), certificate of need ($1,800,000), and business value ($750,000—about 10 percent of the sale price). The residual amount, Koon's "real estate value," of $4,640,000 constituted about 62 percent of the total sale price, which correlated well with his comparable transactions, in which the realty constituted on average 52.8 percent of the total sale price.

{¶ 6} Toward the end of the BOR hearing, the BOR examined William McVeigh, the property-tax manager for Extendicare, the parent company of Arbors East and the ultimate owner/operator of the facility. McVeigh, who is also tax manager for numerous other nursing homes in Ohio, testified that the sale of a nursing home typically, as in this case, involves the sale of the "operator's lease" with all the attendant licenses necessary to operate the nursing home—a "realty plus" transaction. McVeigh further testified that under prior law, the documentation of such sales was drafted to reflect real estate without other assets because real-estate investment trusts "weren't allowed to * * * call [their holdings] anything but real estate."

{¶ 7} The Purchase and Sale Agreement refers to the property transferred as the "Leased Property" as defined in the lease between Arbors East and the seller, but the lease was never placed into evidence. Arbors East submitted to the BOR amendments to the lease after the hearing, but the BOR did not include them in the

record certified to the BTA.[1]  The BOR did include a settlement statement in the record, a one-page document indicating a "total consideration" of $7,490,000. Conspicuously absent from the record is any evidence of an allocation of the sale price to multiple assets that was contemporaneous with the sale; indeed, both Koon and McVeigh testified that no contemporaneous allocation had been performed.

{¶ 8} At the BOR hearing, the BOE objected to the BOR's consideration of Koon's appraisal report on the grounds that there had been a recent, arm's-length sale of the subject property.  The BOE also objected, on hearsay grounds, to Koon's testimony that he had been told that the April 2011 sale was of a going concern.

{¶ 9} On October 14, 2014, the BOR convened to determine the subject property's value.  The auditor's delegate stated that "the panel wants to make it clear for the record that * * * the price paid for this property as recorded was the price paid for the going concern."  In arriving at that conclusion, the BOR relied on "additional documentation that was requested and received from the property owner, all but the original lease agreement, which [it] did not receive."  The auditor's delegate stated that the additional documentation included the lease amendments and a "Schedule D-1 analysis of property, plant, and equipment, which was part of [Arbors East's] federal-tax-filing materials."  Relying on the Schedule D-1, which "conforms with Mr. Koon's appraisal report," the BOR made a deduction of $287,100—that being the "net book value as reported to the IRS" of certain personal property.

{¶ 10} After the deduction, the adjusted sale price indicated that the real-estate value was $7,202,900, and the BOR adopted that amount as the property value for tax years 2011, 2012, and 2013.  The treasurer's delegate noted that Arbors East "did not really prove * * * any other deductions were warranted,"

---

[1] Koon stated that the "Leased Property" referred to in the purchase contract was limited to the real estate, but the purchase contract does refer to a bill of sale for the conveyance of "Landlord Personal Property" to Arbors East in conjunction with the sale.

inasmuch as the record did not contain an allocation contemporaneous with the sale and Koon's allocation was performed "well after the sale." The delegate also alluded to the existence of a contemporaneous appraisal (not in the record), but because "it was also based on the going-concern value," he was unsure "how it would support breaking out those other elements to the sale other than" the FF&E that the BOR deducted from the sale price.

{¶ 11} When Arbors East appealed to the BTA, neither side offered additional evidence. After the parties briefed the case, the BTA issued its decision, which noted that the BOR had received additional documents from Arbors East after the hearing—namely, the lease amendments and the federal tax filing—and that although the BOR relied on at least one of the documents, they were not included in the record certified by the BOR to the BTA. BTA Nos. 2014-4527 and 2014-4607, 2015 Ohio Tax LEXIS 3201, *4 (July 30, 2015).

{¶ 12} The BTA determined that the $7,490,000 sale price should be regarded as the best evidence of value. Noting the property owner's burden to demonstrate that its allocation of the sale price is proper in order to obtain a reduction from the sale price, the BTA held that Arbors East had not satisfied that burden inasmuch as (1) "all documentation submitted to the county auditor reflects a value for realty only" and (2) there was no contemporaneous allocation of the sale price. *Id.* at *10. The BTA found itself "unable to verify which items other than the real property described in the sale documents in fact transferred or the portion of the overall purchase price attributable to those items." *Id*. at *11. Moreover, the BTA rejected any allocation to goodwill because "the Supreme Court [of Ohio] has found [goodwill] is not an asset separable from the realty." *Id*. at *11-12. Accordingly, the BTA adopted the total sale price of $7,490,000 as the property value for tax years 2011, 2012, and 2013.

## II. Standard of review

{¶ 13} Our review of a legal issue is de novo, not deferential. *Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035, 942 N.E.2d 1054, ¶ 10. But if we determine that there was no legal error, we review the BTA's decision concerning the weighing of appraisal evidence under a highly deferential abuse-of-discretion standard. *See EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 9, 14. Our discernment of multiple legal errors in this appeal leads us to remand this case to the BTA for additional factfinding.

## III. Analysis

### A. *The BTA did not find that the sale involved only real estate but did reject any allocation*

{¶ 14} The BTA rejected any allocation of the April 2011 sale price to assets other than realty because it was "unable to verify which items other than the real property described in the sale documents in fact transferred or the portion of the overall purchase price attributable to those items." 2015 Ohio Tax LEXIS 3201 at *11. Notably absent in the BTA's decision is any finding that the sale involved a transfer of real estate only. Although the BTA observed that "all documentation submitted to the county auditor reflects a value for realty only," *id*. at *10, referring to the deed and the conveyance-fee statement, the BTA did not extend that finding to the totality of the evidence, including the record developed before the BOR.

{¶ 15} Nor is it surprising that the BTA stopped short of determining that the April 2011 sale price in fact reflected the transfer of merely real estate: the BOR had specifically determined based on the entire record before it that the sale price was "the price paid for the going concern," and it had ordered a deduction for FF&E based on documentation that was not included in the record certified to the BTA.

6

*B. The BTA's authority to investigate should be employed to obtain a complete record in order to avoid prejudice to the parties*

{¶ 16} This case implicates the principles used to determine how real estate is valued when it is transferred in a single transaction together with other property. When applied to such "bulk sales," the familiar precept that "[t]he best evidence of the 'true value in money' of real property is an actual, recent sale of the property in an arm's-length transaction" has a corollary: the principle that the law favors a "proper allocation of [a] lump-sum purchase price" over "an appraisal ignoring the contemporaneous sale." *Conalco, Inc. v. Monroe Cty. Bd. of Revision*, 50 Ohio St.2d 129, 363 N.E.2d 722 (1977), paragraphs one and two of the syllabus. That this fundamental principle applies here is undisputed; the only question is the propriety of the allocation presented by the owner. And Koon's appraisal was offered for the purpose of showing that the sale price reflected the transfer of a going concern, with a view to demonstrating a proper allocation.

{¶ 17} Under these circumstances, it is essential that the BTA confront the issue of the propriety of an allocation of the sale price by consulting *all* of the evidence that has been submitted to the BOR, in addition to any evidence submitted at the BTA hearing. R.C. 5717.01 requires the county boards of revision to transmit to the BTA "all evidence offered in connection" with a valuation complaint, and we have admonished that county boards of revision should regard this as their legal duty. *Knickerbocker Properties, Inc. XLII v. Delaware Cty. Bd. of Revision*, 119 Ohio St.3d 233, 2008-Ohio-3192, 893 N.E.2d 457, ¶ 4, fn. 1. We have also found plain error when the BTA adopts an appraisal's valuation after the BOR has failed to certify potentially material portions of the record on which it relied, or may have relied, in rejecting the appraisal. *Cannata v. Cuyahoga Cty. Bd. of Revision*, 147 Ohio St.3d 129, 2016-Ohio-1094, 62 N.E.3d 144, ¶ 19. Additionally, the BTA's duty to perform its independent evaluation of all the pertinent evidence is well established. *Vandalia-Butler City Schools Bd. of Edn. v. Montgomery Cty. Bd. of*

*Revision*, 130 Ohio St.3d 291, 2011-Ohio-5078, 958 N.E.2d 131, ¶ 13; *see, e.g.*, *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 76 Ohio St.3d 13, 16, 665 N.E.2d 1098 (1996).

{¶ 18} Here, the property owner obtained a partial reduction at the BOR based on evidence that the BOR failed to transmit to the BTA. This evidence apparently assisted in persuading the BOR both that the sale of the property was a going-concern sale and that there was a sufficient basis for allocating a portion of the sale price to FF&E. It is true that Arbors East did not avail itself of its opportunity at the BTA hearing to make sure that the record was complete. But like the board of education in *Cannata*, Arbors East here could reasonably rely on the BOR's statutory duty to transmit all evidence submitted to it. When the BTA ascertains that evidence is missing, it should notify the parties and exercise its statutory authority to investigate pursuant to R.C. 5717.01. *See Cannata* at ¶ 21. Here, the BTA could have convened a new hearing and invited the submission of the omitted evidence, issued an order to the BOR, or both. On remand, the BTA should exercise its authority to supplement the record with the omitted documents or with any other evidence the BTA deems material to its determination.

*C. When the record permits, the business value of a nursing home or congregate-care facility should be separated from its real-estate value*

{¶ 19} The case law clearly establishes that a sale of a congregate-care facility is a sale of the facility's real-estate and business activities. *Dublin Senior Community Ltd. Partnership v. Franklin Cty. Bd. of Revision*, 80 Ohio St.3d 455, 460, 687 N.E.2d 426 (1997). Such facilities charge residents for providing care and services, which is a general business activity, and charge rent, which is a real-estate activity. *Id.* "In a valuation of only the real estate, the two activities must be kept separate." *Id.*; *accord Health Care REIT, Inc. v. Cuyahoga Cty. Bd. of Revision*, 140 Ohio St.3d 30, 2014-Ohio-2574, 14 N.E.3d 1009, ¶ 41-42 (lead opinion); *LTC*

*Properties, Inc. v. Licking Cty. Bd. of Revision*, 133 Ohio St.3d 111, 2012-Ohio-3930, 976 N.E.2d 852, ¶ 21.

{¶ 20} Viewing the present appeal against the backdrop of this case law leads us to conclude that the BTA erred by holding as a matter of law that any allocation to goodwill is improper. The decision the BTA relied on, *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 128 Ohio St.3d 565, 2011-Ohio-2258, 949 N.E.2d 1, is inapposite, as is *St. Bernard Self-Storage, L.L.C. v. Hamilton Cty. Bd. of Revision*, 115 Ohio St.3d 365, 2007-Ohio-5249, 875 N.E.2d 85, the decision *Hilliard City Schools* itself relies on.

{¶ 21} While both cases concerned the proper allocation of a sale price, *Hilliard City Schools* involved the sale of a hotel and *St. Bernard Self-Storage* involved the sale of a self-storage facility. The BTA's finding in *Hilliard City Schools* that most of the income was derived from room rentals led us to observe that the goodwill associated with the hotel facility was presumably not "a separable asset that is distinct from the realty." *Hilliard City Schools* at ¶ 33. In so stating, we cited *St. Bernard Self-Storage*, in which the BTA found that the business of leasing storage space and the income generated from that business meant that a "business value" associated with the storage facility could not be severed from the realty or transferred separately, *St. Bernard Self-Storage* at ¶ 24-25. Both of those cases involved businesses that derived profit by permitting others to use real estate. Neither of those decisions speaks to the materially different circumstance of the sale of a nursing home, with its business value that is separable from real-estate value. The BTA therefore erred by regarding those decisions as controlling here.

D. *The case law does not prohibit an allocation of sale price merely because there is no documentation of an allocation contemporaneous with the sale*

{¶ 22} The BTA in this case laid great weight on the absence of a contemporaneous allocation of the sale price to the assets sold. It is true that the case law attaches importance, when allocating the sale price among various bulk-

sale assets, to "corroborating indicia" or the "best available evidence" that is associated with matters contemplated by the parties at the time of sale. *Sapina v. Cuyahoga Cty. Bd. of Revision*, 136 Ohio St.3d 188, 2013-Ohio-3028, 992 N.E.2d 1117, ¶ 18, 37, 41 (mortgage loan secured by the real property was within the contemplation of the parties and constituted corroborating evidence that supported an allocation to the real estate); *Hilliard City Schools* at ¶ 26-27 (allocation to personal property set forth in lender's contemporaneous appraisal was evidence of the "value the parties attached to the personal property in connection with the sale of the hotel as a going concern" and accordingly furnished corroborating evidence); *accord W.S. Tyler Co. v. Lake Cty. Bd. of Revision*, 57 Ohio St.3d 47, 49, 565 N.E.2d 826 (1991) (fact that allocation was negotiated by the parties militated in favor of affirming reliance on that allocation).

{¶ 23} On the other hand, we have stated that "negotiation of the allocation itself is neither a necessary nor a sufficient condition for concluding that the allocation reflects the value of the constituent properties." *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 132 Ohio St.3d 371, 2012-Ohio-2844, 972 N.E.2d 559, ¶ 26. Most significantly, we recently found an abuse of discretion by the BTA when it failed to consider after-the-fact appraisal evidence offered to demonstrate that the original allocation set forth on the conveyance-fee statement did not reflect the true value of the real-estate component of the sale. *Buckeye Terminals, L.L.C. v. Franklin Cty. Bd. of Revision*, 152 Ohio St.3d 86, 2017-Ohio-7664, 93 N.E.3d 914, ¶ 35. Here as well, appraisal testimony was offered to show that the original report of the total sale price on the conveyance-fee statement did not reflect the property value. And the appraisal here is particularly incisive, given that its examination of the market involves not merely a valuation of the real-estate component but also a justification for viewing the total sale price as consisting of realty and nonrealty components.

*E. On remand, the BTA shall determine whether—and if so, what portion of—the sale price should be allocated to assets other than real estate*

**{¶ 24}** Our determination that the BTA's decision is marred by legal error requires that we vacate the decision and remand the case for further proceedings. On remand, the BTA will confront three tasks. First, the BTA will need to exercise its authority to obtain a complete record for deciding the case, as we have previously discussed. Second, the BTA must determine whether there is adequate support in the record to find that any of the consideration paid by Arbors East was for assets other than real estate. Third, if the record supports the conclusion that the sale was a "bulk sale" in the relevant sense, the BTA will need to determine the proper allocation of the sale price.

## IV. Conclusion

**{¶ 25}** For the foregoing reasons, we vacate the decision of the BTA and remand the case for further proceedings consistent with this opinion.

Decision vacated

and cause remanded.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, FISCHER, and DEWINE, JJ., concur.

DEGENARO, J., not participating.

————————————

Wayne E. Petkovic, for appellant.

Rich & Gillis Law Group, L.L.C., Mark H. Gillis, and Karol C. Fox, for appellee Columbus City Schools Board of Education.

————————————