[Cite as *Ohio Dist. Council Inc. of the Assemblies of God v. Speelman*, 2018-Ohio-4388.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| OHIO DISTRICT COUNCIL, INC. OF THE ASSEMBLIES OF GOD, et al., | : | |
| | : | CASE NOS. CA2018-02-025 |
| Plaintiffs-Appellants/ | | CA2018-02-031 |
| Cross-Appellees, | : | |
| | | O P I N I O N |
| - vs - | : | 10/29/2018 |
| | | |
| PATRICIA M. SPEELMAN, et al., | : | |
| | | |
| Defendants-Appellees/ | : | |
| Cross-Appellants. | | |
| | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2011-12-4362

Taft Stettinius & Hollister LLP, Donald C. Brey, Celia M. Schnupp, 65 East State Street, Suite 1000, Columbus, OH 43215, for plaintiffs-appellants/cross-appellees, Ohio District Council, Inc. of the Assemblies of God and Christian Assembly of God

Law Office of Bill W. Cummins, Bill W. Cummins, 5815 Winged Foot Drive, West Chester, Ohio 45069, for defendants-appellees/cross-appellants, S. Mathew Morgan, Dennis Speelman, Fellowship of Praise Church of God, Inc., and defendant-appellee, Patricia Speelman

Eric B. Hershberger, 862 Bluffview Drive, Columbus, Ohio 43235, for defendants-appellees/cross-appellants, S. Mathew Morgan, Dennis Speelman, Fellowship of Praise Church of God, Inc., and defendant-appellee, Patricia Speelman

**S. POWELL, P.J.**

{¶ 1} Plaintiffs-appellants, Ohio District Council, Inc. of the Assemblies of God and

Christian Assembly of God, appeal from the decision of the Butler County Court of Common

Pleas that rendered judgment in their favor and against defendants-appellees, Dennis and Patricia Speelman, Samuel Morgan, and Fellowship of Praise Church of God, Inc. The defendants cross-appeal. For the reasons described below this court reverses the lower court's decision with respect to damages and remands for further proceedings.

{¶ 2} Christian Assembly of God ("Christian Assembly") was a church located in Middletown, Ohio and was established in 1968. In 1972, Christian Assembly applied for and was granted affiliation with Assemblies of God ("AOG"), a national, hierarchical church organization. Ohio District Council, Inc. of the Assemblies of God ("ODC") is a subordinate organization of AOG. ODC is comprised of Assemblies of God churches in Ohio.

{¶ 3} Christian Assembly was once a thriving church; it underwent a physical expansion in the early 1980s because of a growing congregation. However, by 2005, the church was in serious decline. Its pastor resigned and most of the congregation left. The remaining church members sought a new pastor and eventually called defendant Dennis Speelman ("Speelman") to pastor and to improve the church's health.

{¶ 4} Speelman and his wife, defendant Patricia Speelman, acted as co-pastors at the church from 2006 through 2011. However, membership at Christian Assembly continued to decline. In 2010, Speelman and Patricia met with defendant Samuel Morgan, the pastor of defendant Fellowship of Praise Church of God, Inc. ("FOP"). Morgan had demonstrated success in church development; he had overseen FOP grow from 12 members to over 900.

{¶ 5} The Speelmans and Morgan discussed Christian Assembly disaffiliating with AOG and merging with FOP. Eventually, nine voting members of Christian Assembly's board, which included both Speelmans, voted unanimously to disaffiliate and merge with FOP. The board further voted to move day-to-day operations of Christian Assembly to FOP and transfer Christian Assembly's real and personal property to FOP.

{¶ 6}  Speelman and Morgan then entered into a "merger agreement" on behalf of their respective churches.  Christian Assembly and FOP filed a certificate of merger with the Ohio Secretary of State.  The parties recorded a deed conveying Christian Assembly's real property, i.e., the church premises, to FOP.

{¶ 7}  Speelman and Christian Assembly's board notified ODC of the disaffiliation.  ODC disputed Christian Assembly's disaffiliation and passed a resolution finding that Speelman and the remaining voting members of Christian Assembly had breached ODC's constitution by disaffiliating and transferring Christian Assembly's property without its approval.  Essentially, ODC claimed that the actions taken by Speelman and Christian Assembly's board were void and the transfer of Christian Assembly's real and personal property to FOP was unlawful.

{¶ 8}  ODC served an eviction notice at Christian Assembly's church premises and then, in 2011, filed this action asking the lower court to declare that the defendants' actions with respect to the disaffiliation, merger, and transfer of property were void.  ODC also asserted claims for conversion, fraud, and conspiracy.  Finally, ODC pled a claim for forcible entry and detainer and for a writ of restitution of the church premises.

{¶ 9}  In 2014, the matter proceeded to a bench trial.  ODC introduced the relevant constitutions and by-laws of the AOG, ODC, and Christian Assembly.  ODC argued that these documents established that the defendants' actions in the merger and transfer of property exceeded the defendants' authority and that Christian Assembly's property became ODC's because of a contingency set forth in ODC's constitution.[1]  Morgan, Speelman, and several representatives of ODC testified.  Morgan testified that FOP had

---

1. ODC's constitution provided that if Christian Assembly's membership fell below a certain threshold it would lose its sovereign status and Christian Assembly's property would then become ODC's.  Christian Assembly reported less than 20 members in 2005 and 2006, triggering the contingency.

been using the church premises since the disaffiliation and the congregation had grown to approximately 150 worshipers.

{¶ 10} In 2015, the lower court issued a decision granting judgment in favor of the defendants. The court found that Christian Assembly had the ability to merge with FOP and alienate its property based on its own corporate powers. The court declined to resolve ODC's claim that its constitution and by-laws made it sovereign over Christian Assembly. The court reasoned that this issue was a matter of religious concern not subject to review by a secular court. Accordingly, the court granted judgment in favor of Christian Assembly on ODC's claims.

{¶ 11} ODC appealed. This court sustained the appeal, finding that the issues raised in ODC's complaint did not require the lower court to resolve ecclesiastical matters. *Ohio Dist. Council, Inc. of the Assemblies of God v. Speelman*, 12th Dist. Butler No. CA2015-02-031, 2016-Ohio-751, ¶ 31. We reversed and remanded with instructions that the lower court construe the effect of the relevant AOG and ODC constitutions and by-laws. *Id.* at ¶ 40.

{¶ 12} The lower court then issued a second decision finding that Christian Assembly was bound by ODC's constitution and that control of Christian Assembly and title to its property were held by ODC. Accordingly, the court found that the defendants' actions merging Christian Assembly with FOP were void, including the transfer of property.

{¶ 13} The court further found in favor of ODC on its claims of conversion against defendants Speelman, Morgan, and FOP, but not against Patricia Speelman.[2] With respect to damages for conversion, the court found that ODC failed to prove damages with reasonable certainty and awarded nominal damages of $100. The court dismissed ODC's

---

2. ODC did not appeal the dismissal of claims against Patricia Speelman.

claims of fraud and conspiracy, finding that ODC failed to prove all the necessary elements of those claims. Finally, the court granted ODC's request for a writ of restitution for the church premises.

{¶ 14} ODC appeals, raising four assignments of error. The defendants raise one assignment of error in their cross-appeal, which this court addresses first.

{¶ 15} Cross-assignment of Error No. 1:

{¶ 16} THE TRIAL COURT ERRED BY FINDING ANY DEFENDANT CONVERTED THE PROPERTY.

{¶ 17} The defendants argue that the lower court erred in finding Speelman and Morgan liable for conversion because neither personally received any property in the merger of the two churches, i.e., only FOP received Christian Assembly's property. The defendants further argue that conversion was legally impossible because real property cannot be the subject of a conversion action.

{¶ 18} This assignment of error presents both a legal argument and a challenge to the evidence in support of the court's finding of liability. This court reviews legal issues de novo. *Arbors E. RE, L.L.C. v. Franklin Cty. Bd. of Revision*, 153 Ohio St.3d 41, 2018-Ohio-1611, ¶ 13. Challenges to the evidence supporting a finding of liability in a civil case are subject to a manifest weight of the evidence analysis, which concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12. A manifest weight analysis requires this court to weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *Id.* at ¶ 20.

{¶ 19} Conversion is "the wrongful exercise of dominion over property to the

exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *McIntosh v. Alum Cliff Industries*, 12th Dist. Butler No. CA2001-03-049, 2001 Ohio App. LEXIS 5473, *2 (Dec. 10, 2001), quoting *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96 (1990). The essential elements of conversion are: "(1) plaintiff's ownership or interest in the property; (2) plaintiff's actual or constructive possession or immediate right to possession of the property; (3) defendant's wrongful interference with plaintiff's property rights; and (4) damages." *Preston Trucking Co., Inc., Frontier Div. v. Lindamood*, 12th Dist. Warren No. CA86-12-076, 1987 Ohio App. LEXIS 9223, *4 (Oct. 19, 1987).

{¶ 20} The lower court could conclude that Speelman and Morgan were liable for conversion despite FOP being the only legal recipient of property in the merger. A conversion claim does not require a plaintiff to prove that a defendant was enriched. Instead, the plaintiff must show that the defendant wrongfully interfered with the plaintiff's property rights. In this regard, the record is undisputed that Morgan and Speelman directed the merger of and transfer of property between Christian Assembly and FOP, did so without ODC's consent, and continued to take acts in furtherance of the merger despite knowledge of ODC's disapproval. Thus, some competent and credible evidence supports the court's finding of liability against Morgan and Speelman for conversion.

{¶ 21} Next, the defendants argue that they could not be found liable for conversion with respect to the transfer of Christian Assembly's church premises because real property cannot be the subject of a conversion claim. The implication of the defendants' argument is that ODC should have pled a cause of action in trespass as opposed to conversion. The defendants did not raise this argument in the proceedings below.

{¶ 22} An action for conversion lies only with respect to personal property; real estate is not subject to conversion. 18 Ohio Jurisprudence 3d, Conversion, Section 4, at 345

(2001), citing 18 Am. Jur. 2d, Conversion, Section 19; *accord Beavers v. PNC Bank, N.A.*, 8th Dist. Cuyahoga No. 99773, 2013-Ohio-5318, ¶ 30.   ODC did not expressly plead an action in trespass.  But this court finds no error.

{¶ 23} Civ.R. 8 requires notice pleading. A plaintiff must concisely set forth sufficient operative facts in a claim to give fair notice of the nature of the action.  Civ.R. 8(A), (E).  Here, ODC served an eviction notice and then filed a complaint that alleged claims of conspiracy, fraud, and conversion, which accused the defendants of "fraudulently and knowingly converting property and assets," including transferring the church premises to FOP.  The complaint further alleged a claim for forcible entry and detainer and requested a writ of restitution of the premises.  This court finds that the complaint stated sufficient operative facts such that the defendants were notified that ODC was asserting a claim in the nature of civil trespass to the church premises.  Moreover, the fact that the defendants waited seven years to raise this issue belies any potential prejudice.  This court overrules the defendants' cross-assignment of error.

{¶ 24} This court addresses ODC's first two assignments of error collectively.

{¶ 25} Assignment of Error No. 1:

{¶ 26} THE TRIAL COURT ERRED AS A MATTER OF LAW IN HOLDING THAT THE AMOUNT OF DAMAGES MUST BE PROVEN WITH CERTAINTY.

{¶ 27} Assignment of Error No. 2:

{¶ 28} THE TRIAL COURT ABUSED ITS DISCRETION BY HOLDING THAT THERE WAS NO EVIDENCE OF DAMAGES FOR THE DEPRIVATION OF THE PROPERTY.

{¶ 29} In its first and second assignments of error, ODC argues that the court improperly subjected it to a heightened standard of proof for damages, i.e., the court required it to prove damages to a "mathematical certainty" although it was only required to

prove damages to a reasonable certainty. ODC further argues that the court abused its discretion by not considering the evidence introduced at trial regarding ODC's loss of use of the church premises.

{¶ 30} This court reviews the lower court's award of damages for an abuse of discretion. *Henry v. Richardson*, 193 Ohio App.3d 375, 2011-Ohio-2098, ¶ 8 (12th Dist.). However, the issue of whether the lower court applied the correct measure of and burden of proof for damages is a legal matter that this court reviews de novo.

{¶ 31} The measure of damages in a case alleging injury to real property "is the reasonable cost of restoration plus reasonable value of loss of use unless the cost of restoration exceeds the difference in market value before and after the damage, in which case such difference becomes the measure." *Adams v. Riley*, 12th Dist. Butler No. CA84-08-086, 1985 Ohio App. LEXIS 8828, *9 (Oct. 15, 1985). However, this is not an "arbitrary or exact formula to be applied in every case without regard to whether its application would compensate the injured party fully for losses which are the proximate result of the wrongdoer's conduct." *Id.*, citing *Adcock v. Rollins Protective Servs. Co.*, 1 Ohio App.3d 160 (1st Dist.2001); and *Thatcher v. Lane Constr. Co.*, 21 Ohio App.2d 41 (1970). "It is a fundamental principle of the law of damages that an injured party should recover an amount sufficient to compensate him fully for losses which are the result of a wrongdoer's conduct." *Thatcher* at 44, quoting 69 A. L. R. 2d 1335, 1340.

{¶ 32} ODC submitted evidence concerning the value of the church premises but did not submit any evidence concerning restoration costs. Accordingly, the cost of restoration is not a damage available to ODC.

{¶ 33} With respect to loss of use, ODC's assistant superintendent, Jim Palmer, testified that it would cost ODC approximately $7,700 per month to rent church premises comparable to those at Christian Assembly. He based this claim on his knowledge of the

rental costs at other AOG church properties in Washington Courthouse and Fremont, Ohio.

{¶ 34} Morgan made an admission in his testimony related to loss of use evidence. Morgan testified that he had, on FOP's behalf, researched renting a church in Butler County. Morgan found that it would cost $1,500 per month, "on the low end," to rent a church in West Chester, Ohio. There was also testimony and documentary evidence presented at trial as to the fair market value of the church premises as well as the costs paid by FOP for maintenance of the premises during the holdover period.

{¶ 35} In its decision on loss of use damages, the lower court announced that it would afford Palmer's testimony no weight. The court explained that the two churches Palmer used for comparison were "well outside" the Middletown real estate market and that Palmer did not testify that the buildings were comparable. The court did not discuss Morgan's testimony or other relevant evidence presented at trial. Based on these findings, the court found that ODC failed to prove damages with reasonable certainty and awarded $100 in nominal damages.

{¶ 36} "The uncertainty which prevents a recovery of damages is generally uncertainty as to the fact of the damages, not the amount." *Bemmes v. Pub. Emps. Retirement Sys.*, 102 Ohio App.3d 782, 789 (12th Dist.1995), citing 22 Am. Jur. 2d, Damages, Section 25 (1988, Supp.1995). "Where it is certain that damages have resulted, mere uncertainty as to the amount will not preclude the right of recovery." *Id.* As to the amount of damages, only a reasonable certainty is required, which has been defined as "that degree of certainty of which the nature of the case admits." *Id.* citing 22 Am. Jur.2d, Damages, Section 23 (1988, Supp.1995). Damages are not uncertain merely because they cannot be calculated with absolute exactness; it is sufficient if the evidence affords a reasonable basis for computing damages, even if the result is only an approximation. *TJX Cos., Inc. v. Hall*, 183 Ohio App.3d 236, 2009-Ohio-3372, ¶ 32 (8th Dist.). "Reasonable

certainty" in tort cases requires less proof than in a breach of contract case. *See Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 144 (9th Dist.1996).

{¶ 37} This court has held that a trial court abuses its discretion when it awards nominal damages when credible evidence of damages is presented at trial. *West v. Shattuck*, 12th Dist. Clinton No. CA86-02-003, 1986 Ohio App. LEXIS 9272 (Dec. 1, 1986). The appellant, a mobile home owner, hired the appellee, a mover, to transport her mobile home. *Id.* at *1. During transport, the mover seriously damaged the home. *Id.* at *1-2. At trial, the owner testified as to her belief that the home was worth $6,500 to $7,000 and was rendered valueless by the damage. *Id.* at *3. The owner also called her insurance agent as an expert witness, who provided a similar estimate as to the home's worth before and after the damage. *Id.* at *3-4. The mover presented no evidence of the value of the home. *Id.* at *2.

{¶ 38} The lower court held that the owner had not put forth credible evidence as to the market value of the mobile home before the damage occurred because she did not have the qualifications to testify as to the value of mobile homes. *Id.* at *4. The lower court also discredited the insurance agent's testimony because the agent had not physical inspected the home prior to the damage. *Id.* *4.

{¶ 39} This court reversed, noting that the owner was qualified to offer an opinion as to the value of her own home under Ohio law and that the court erred in ignoring the evidence presented by the insurance agent. *Id.* at *4-5. This court noted that "'[o]nce a right to damages has been established, such right will not be denied because the damages are incapable of being calculated with mathematical certainty.'" *Id.* at *5, quoting *Pennant Moldings, Inc. v. C & J Trucking Co.*, 11 Ohio App.3d 248, 252 (12th Dist.1983).

{¶ 40} Similarly, the lower court's decision to award nominal damages for ODC's loss of use of an approximate 18,000 square foot church facility for seven years is unreasonable

given that the record contains some credible and probative evidence of loss of use by which the court could arrive at a damage award that would be within its discretion and approximate damages to a reasonable certainty. Palmer testified at length concerning his background with ODC and was qualified to offer an opinion as to rents based on his involvement with other AOG churches. Palmer's testimony as to comparable rents had a sufficient basis to permit an informed opinion; he explained that the two AOG churches were renting space in similar rural, farming areas, and that he had based his price on the average rent per square foot. Morgan testified to "quite a bit" of knowledge of the church rental market in nearby West Chester and many other counties. Thus, the court had a baseline and range of rental values from which it could begin to determine a damage award. ODC also introduced the testimony and written opinion of its appraiser, who offered an opinion as to the value of the property, which was $325,000. The appraisal sets forth significant detail concerning the condition of the church, which the lower court could take into consideration in fashioning an appropriate award. The defendants submitted detailed records concerning the ongoing maintenance costs of the property.

{¶ 41} While not mathematically precise, an award of damages derived from this evidence would approximate ODC's damages more precisely than a nominal award of $100. Therefore, this court finds that there was sufficient evidence in the record by which the lower court could exercise its discretion and award ODC with damages that are reasonable given the seven-year loss of use of the church premises. Accordingly, this court reverses and remands with instructions that the court review the record, consider the evidence submitted by the parties, exercise its discretion, and enter an appropriate award of damages in favor of ODC. This court sustains ODC's first and second assignments of error.

{¶ 42} Assignment of Error No. 3:

- 11 -

{¶ 43} THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO AWARD PUNITIVE DAMAGES AND ATTORNEY'S FEES FOR DEFENDANTS' CONVERSION.

{¶ 44} ODC next argues that the court abused its discretion in declining to award punitive damages. R.C. 2315.21(C) permits an award of punitive damages in a tort case where the actions or omissions of a defendant demonstrate "malice" and the plaintiff proves actual damages because of those actions or omissions. The plaintiff must prove, by clear and convincing evidence, his right to recover punitive damages. R.C. 2315.21(D)(4). Clear and convincing evidence is that degree of proof which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proved. *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

{¶ 45} The Ohio Supreme Court has held that "[a]ctual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 32 Ohio St.3d 334 (1987), syllabus. The reason behind awarding punitive damages in Ohio "has been recognize * * * as that of punishing the offending party and setting him up as an example to others that they might be deterred from similar conduct * * *." *Detling v. Chockley*, 70 Ohio St.2d 134, 136 (1982), overruled on other grounds in *Cabe v. Lunich*, 70 Ohio St.3d 598 (1994). Since punitive damages are assessed for punishment and not compensation, a positive element of conscious wrongdoing is always required. *Preston* at 335.

{¶ 46} The court found that the defendants' actions with respect to the conversion claims were not the result of actual malice. After a thorough review of the record, we find that conclusion supported by competent and credible evidence. Speelman testified that he did not read ODC's constitution or by-laws and believed that Christian Assembly was

"voluntarily" affiliated with AOG and ODC. When he was called to pastor, Christian Assembly's board did not inform him that he had any obligations to AOG. When asked why he continued to take steps effectuating the merger despite being aware of ODC's protest, Speelman explained, "we weren't doing anything wrong."

{¶ 47} Morgan also testified that he acted under the assumption that the merger was permitted because of prior dealings with AOG churches. He understood that AOG churches were only loosely affiliated with the national or regional organizations and that they were all "sovereign" churches. Morgan explained that he had no interest in reviewing the by-laws or constitutions of either AOG or ODC because he presumed that Christian Assembly was sovereign. Morgan did review the chain of title on Christian Assembly's real property. From this he observed that AOG had no legal interest in the property, which confirmed to him that the church was sovereign. The evidence, if believed, would indicate that both Speelman and Morgan did not act with hatred or malice.

{¶ 48} ODC next argues that a punitive damage award was proper because the evidence demonstrated that the defendants acted purposefully and knowingly pursuant to R.C. 2315.21(D)(6) and 2901.22(A) and (B).

{¶ 49} Generally, punitive damages in Ohio are capped. R.C. 2315(D)(2). However, R.C. 2315.21(D)(6) sets forth the following exception:

> Division (D)(2) of this section does not apply to a tort action where the alleged injury, death, or loss to person or property resulted from the defendant acting with one or more of the culpable mental states of purposely and knowingly as described in section 2901.22 of the Revised Code and when the defendant has been convicted of or pleaded guilty to a criminal offense that is a felony, that had as an element of the offense one or more of the culpable mental states of purposely and knowingly as described in that section, and that is the basis of the tort action.

{¶ 50} Thus, R.C. 2315.21(D)(6) sets forth a specific exception to the statutory cap on punitive damages where a defendant's tortious acts resulted in a felony conviction where

the culpable mental states of knowingly or purposefully were demonstrated.

{¶ 51} R.C. 2315.21(D)(6) has no application to this case. The court did not award punitive damages so there were no damages to cap. Moreover, there was no evidence of any criminal charges being brought against any of the defendants that were the basis of this tort action. This court overrules ODC's third assignment of error.

{¶ 52} Assignment of Error No. 4:

{¶ 53} THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO FIND JUDGMENT IN FAVOR OF THE DEFENDANTS ON THE FRAUD AND CIVIL CONSPIRACY CLAIMS.

{¶ 54} ODC argues that the lower court lost its way in finding that ODC failed to establish its fraud and conspiracy claims. ODC argues that the greater weight of the evidence established those claims and this court should direct a judgment in its favor. Again, our standard of review requires us to weigh the evidence and all reasonable inferences, considers the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *Eastley*, 2012-Ohio-2179 at ¶ 20. After a thorough review of the record, we find that some competent and credible evidence exists to support the lower court's findings in the defendants' favor.

{¶ 55} The fraud claim required ODC to demonstrate that Speelman knowingly made a false representation of material fact with the intent to mislead and induce ODC's reliance on that fact, that ODC justifiably relied on that fact, and damages. *See Roberts v. McCoy*, 12th Dist. Butler No. CA2016-04-071, 2017-Ohio-1329, ¶ 15. ODC claimed that Speelman defrauded it by falsely representing that he would agree to obey all rules of ODC, including promising to tithe 80 percent of his income to the organization and to become a credentialed AOG minister. ODC alleged that it allowed Speelman to continue as pastor of Christian

Assembly based on these promises.

{¶ 56} The lower court found that Speelman's representations were not made with the intent to induce detrimental reliance. The court noted that Speelman did not tithe as promised because he could not afford to tithe. The record supports this finding. Speelman and his wife earned $200 a week as pastors of Christian Assembly and for some period the couple was residing at the church. The court further found that Speelman did not misrepresent that he would obtain AOG credentials. ODC officials informed Speelman that he could not obtain credentials because of a divorce. There was some evidence that Speelman later could have been credentialed despite the divorce, but the evidence supported the court's conclusion that Speelman was unaware of this development.

{¶ 57} A civil conspiracy is a "malicious combination of two or more persons to injure another person or property, in a way not competent for one alone, resulting in actual damages." *Mohme v. Deaton*, 12th Dist. Warren No. CA2005-12-133, 2006-Ohio-7042, ¶ 36, quoting *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419 (1995). The element of "malicious combination to injure" does not require a showing of an express agreement between defendants, but only a common understanding or design, even if tacit, to commit an unlawful act. *See Pumphrey v. Quillen*, 102 Ohio App. 173, 177-178 (1955), citing *Prosser on Torts (Hornbook Series)*, Section 109, at 1094.

{¶ 58} The court found that Speelman and Morgan did not have a malicious common understanding to commit conversion or wrongfully interfere with ODC's property rights because both operated under the assumption that Christian Assembly was sovereign. As discussed in the preceding assignment of error, this finding is supported by competent and credible evidence in the record. The evidence presented at trial indicated that Speelman and Morgan's belief would have been mostly accurate but for Christian Assembly having decreased in membership and losing its sovereignty. Accordingly, this court finds that the

lower court did not lose its way in finding in favor of the defendants on ODC's fraud and conspiracy claims and therefore this court overrules ODC's fourth assignment of error.

{¶ 59} Judgment affirmed in part, reversed in part, and remanded.

RINGLAND and HENDRICKSON, JJ., concur.